Brent R. Baker (10411)
Aaron D. Lebenta (10180)
Jonathan D. Bletzacker (12034)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
bbaker@parsonsbehle.com
alebenta@parsonsbehle.com
jbletzacker@parsonsbehle.com
ecf@parsonsbehle.com

Maranda E. Fritz (*Pro Hac Vice Pending*)
**MARANDA E. FRITZ, P.C.**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: 646.584.8231
Facsimile: 212.344.6101
Email: maranda@fritzpc.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALPINE SECURITIES CORPORATION, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>Defendant. | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:20-cv-00794-DBB<br><br>Judge David B. Barlow<br><br>**(Immediate Oral Argument Requested)** |

**TABLE OF CONTENTS**

MOTION FOR PRELIMINARY INJUNCTION.......................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION.............. 4

I.     STATEMENT OF FACTS ............................................................................................ 4

     A.     The Disciplinary Proceeding Against Alpine ....................................................... 4

     B.     Alpine's Right to the Commencement of an In-Person Hearing ........................... 6

     C.     Enforcement Presents Much of Its Case In Person.................................................. 7

     D.     Further Postponement Due to COVID-19 ............................................................ 8

     E.     The Parties Proceed with Limited Remote Testimony for Some Witnesses ........ 11

     F.     FINRA *Sua Sponte* Orders the Hearing to Proceed Remotely ............................ 12

II.    ARGUMENT ............................................................................................................... 13

     A.     Alpine Has a Likelihood of Success on the Merits And Raises a Substantial
            Question On the Merits. ...................................................................................... 13

          1.     FINRA May Not Deprive a Member of the Right to An In-Person
                    Hearing Guaranteed by its By-Laws and FINRA Rules.......................... 14

          2.     Forcing Alpine to Proceed Remotely Under the Circumstances of This
                    Case Constitutes a Violation of Due Process of Law ............................... 16

          3.     The Zoom Amendment Does Not Permit FINRA to Violate Alpine's
                    Rights to Fair Process, Including an In Person Hearing .......................... 18

          4.     Application of the Zoom Amendment to Alpine is Impermissible........... 21

     B.     Plaintiffs are Suffering and Will Continue to Suffer Irreparable Harm Absent
            the Requested Injunctive Relief. ......................................................................... 22

     C.     The Balance of Equities Tips in Favor of Plaintiffs' Request for Preliminary
            Injunctive Relief. ................................................................................................ 23

     D.     Issuance of Injunctive Relief is in the Public Interest........................................... 24

III.   CONCLUSION........................................................................................................... 25

4852-2702-2289.v1

# TABLE OF AUTHORITIES

**Cases**

*Awad v. Ziriax,*
 670 F.3d 1111 (10th Cir.2012) ......................................................................... 22

*Bowen v. Georgetown Univ. Hosp.,*
 488 U.S. 204 (1988) .......................................................................................... 21

*City of Chanute v. Kansas Gas & Elec. Co.,*
 754 F.2d 310 (10th Cir. 1985) .......................................................................... 24

*Cmty. Television of Utah, LLC v. Aereo, Inc.,*
 997 F.Supp.2d 1191 (D. Utah 2014) ................................................................. 13

*Davis v. Minetta,*
 302 F.3d 1104 (10th Cir. 2002) ........................................................................ 23

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*
 356 F.3d 1256 (10th Cir. 2004) ........................................................................ 22

Executive Order 13892 ............................................................................................ 20

Executive Order 13924 ............................................................................................ 20

FINRA Rule 9261 ................................................................................... 6, 12, 16, 19

*Free Enterprise Fund v. PCAOB,*
 561 U.S. 477 ...................................................................................................... 17

*Handley Inv. Co. v. SEC,*
 354 F.2d 64 (10th Cir. 1965) ............................................................................ 17

*MonaVie, LLC,*
 2011 WL 1233274 (D. Utah, March 31, 2011) ................................................. 22

*National Ass'n of Securities Dealers v. S.E.C.,*
 431 F.3d 803 (D.C. Cir. 2005) .......................................................................... 17

*NetCoalition v. S.E.C.,*
 715 F.3d 342 (D.C. Cir. 2013) .......................................................................... 23

*Planned Parenthood Ass'n of Utah v. Herbert,*
 828 F.3d 1245 (10th Cir. 2016) .................................................................. 13, 15

*Rooms v. SEC*,
    444 F.3d 1208 (10th Cir. 2006) ...................................................................... 16, 17, 19

Securities Exchange Act Release No. 43-35123 (December 20, 1994) ........................................... 19

*Utah Rep. Party v. Herbert*,
    133 F. Supp. 3d 1337 (D. Utah 2015) ........................................................................ 13

**Statutes**

15 U.S.C. § 78o-3(a) ......................................................................................................... 15

15 U.S.C. § 78o-3(b)(7) ..................................................................................................... 15

15 U.S.C. § 78o-3(b)(8) ................................................................................................ 13, 15

15 U.S.C. § 78o(a) ............................................................................................................ 15

15 U.S.C. § 78s(b) ............................................................................................................ 15

15 U.S.C. § 78s(b)(3)(A)(iii) ........................................................................................ 18, 19

15 U.S.C. § 78s(b)(3)(C) ................................................................................................... 23

15 U.S.C. § 78s(h) ............................................................................................................ 15

15 U.S.C. §§ 78o(a)-(b) .................................................................................................... 15

**Rules**

Rule 65(a) of the Federal Rules of Civil Procedure.......................................................... 13

**Regulations**

17 C.F.R. § 240.19b-4....................................................................................................... 19

17 C.F.R. § 240.19b-4(f)(6).............................................................................................. 18

**Other Authorities**

*Legaspy v. FINRA*,
    2020 U.S. Dist. LEXIS 145735 (N.D. Ill. August 13, 2020)........................................ 17

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Alpine Securities Corporation ("Alpine") moves this Court for a preliminary injunction against Defendant Financial Industry Regulatory Association ("FINRA" or "Defendant"), enjoining FINRA from conducting the remainder of Alpine's pending disciplinary hearing by remote means and from continuing the disciplinary hearing until it can be conducted in-person. Alpine's emergency motion is necessitated by the fact that, on November 2, 2020, the Chief Hearing Officer of FINRA's Office of Hearing Officers issued a *sua sponte* order, without providing Alpine with notice or an opportunity to be heard, depriving Alpine of an in-person disciplinary hearing and instead requiring Alpine to try to defend against those charges through a video conference procedure beginning on November 30, 2020.

As demonstrated below, under the particular circumstances of this proceeding, FINRA's directive forcing Alpine to proceed remotely constitutes a violation of FINRA's agreement with and obligations to its members and a deprivation of the process plainly due to a member that is faced with FINRA's request for the harshest of sanctions, expulsion, and the resulting destruction of its business and livelihood.  Absent relief from this Court, Alpine will be forced to try to defend itself under conditions that will deprive it of the ability to confront and to present witnesses in person.  It will deprive Alpine of its right to effective representation of counsel because its counsel and witnesses are presently scattered across the country, cannot effectively present its defense in this complex case from remote locations, and will be forced to travel to and stay in a pandemic hot spot just to be able to mount an effective and coordinated defense.[1]

---

[1] It is counsel's view that, in order to effectively represent the client in a virtual proceeding, the attorneys for Alpine would have to travel to Salt Lake City where Alpine's business and witnesses are located, and where all of the materials remain from Hearing. But, new COVID cases across the country have reached record highs, and hospitalizations have continued to increase. According to Utah's governor, "The number of infections in our state is growing at an alarming rate...we report record hospitalizations and new deaths day after day. Our hospitals are full." The governor has just declared "a new state of emergency." Newsweek, *GOP Utah Gov. Issues Mask Mandate a Day After Trump's Election Defeat Following 'Alarming Rate' of COVID Spread*,' https://www.msn.com/en-us/health/medical/gop-utah-gov-issues-mask-mandate-a-day-after-trump-s-election-defeat-following-alarming-rate-of-covid-spread/ar-BB1aPA43.

It will be patently unfair to Alpine, since FINRA's Department of Enforcement ("DOE") was able to present its most of its case in person prior to the onset of the pandemic; it is Alpine's *defense* that will be impacted by the deficiencies of remote presentation.  Further, FINRA's drastic approach of forcing this proceeding to go forward at this time, and in this manner, is completely unnecessary.

In the FINRA disciplinary proceeding, which has been ongoing since June 2019, Alpine is charged with imposing allegedly unreasonable fees, and FINRA is seeking as a sanction to expel Alpine from FINRA and thereby destroy its ability to conduct business. Having been named as a Respondent by FINRA in a disciplinary proceeding, Alpine has the right to an "in-person" hearing under FINRA Rules. Alpine invoked its right to defend itself and proceeded to an in-person hearing that began February 18, 2020 (the "Hearing") in Salt Lake City, Utah, maintaining that its fees and conduct were reasonable under the unique circumstances of Alpine's business and consistent with agreements entered into between Alpine and its customers, which FINRA does not have the authority to micromanage and dictate.

At the February in-person hearing, DOE had the opportunity to present the bulk of its case, calling six witnesses, including its key witness who exhaustively reviewed, over three days, FINRA's documentary evidence.  That hearing was adjourned on February 22, 2020 due to an urgent personal matter affecting one of Alpine's attorneys.  The parties agreed to resume in-person proceedings in late April 2020, but the COVID-19 pandemic rendered that impossible. Since then, the parties repeatedly agreed, with the exception of a few limited witnesses, to resume the Hearing *in person* at a future date. On July 30, 2020, the Hearing Officer ordered the Hearing to resume in person on November 30, 2020.

Notwithstanding the Hearing Officer's order, on November 2, 2020, without notice or an opportunity for Alpine to be heard, the Office of Hearing Officers ("OHO") Chief Hearing Officer Maureen Delaney *sua sponte* ordered that the Hearing proceed on November 30, 2020 entirely by virtual

means through Zoom videoconferencing (the "Zoom Order"). The order issued by the Chief Hearing Officer was a completely generic directive, devoid of any acknowledgement of the extensive discussions that have occurred on this issue with the Hearing Officer; the nature of the particular proceeding and reasons that a virtual proceeding is not workable or appropriate; or the severity of the penalty sought.

Alpine is entitled to a stay of the remote proceedings, pending full consideration of this application, because forcing Alpine to try to defend this matter remotely, after DOE had the full benefit of the in-person presentation of its key witnesses, would violate FINRA's agreement with Alpine that it is "entitled to be heard in person;" it would violate the statutory requirement that Alpine be provided a "fair procedure" in which to defend itself; and it would constitute an unlawful deprivation of livelihood and property without due process of law. If forced to proceed by Zoom at this particular stage of the pandemic, and this particular stage of the Hearing, Alpine will suffer irreparable harm, being unfairly deprived of an in-person hearing in a matter in which its business is threatened.

The equities also plainly weigh in favor of issuing a stay of this proceeding, allowing Alpine to obtain a review of the precipitous and unprecedented action taken by FINRA and ensuring that Alpine, notwithstanding the pandemic, receives a full and fair hearing. No harm would flow to FINRA from the issuance of a stay: FINRA can further adjourn the proceeding with Alpine and continue to operate under the same cease and desist order to which FINRA agreed, and which has been in place for the last sixteen months. In the alternative, FINRA has acknowledged the need to continue to conduct in-person hearings and has therefore established a "single location" in "the Washington D.C. metropolitan area" that "provide[s] a venue that can support the appropriate health and safety protocols."[2]

_____

[2] FINRA, "Coronavirus Impact on OHO Hearings," http://www.finra.org/rules-guidance/key-topics/covid-19/oho-hearings (last visited Nov. 3, 2020); FINRA, "Coronavirus Impact on Disciplinary Hearings," http://www.finra.org/rules-guidance/key-topics/covid-19/hearings/impact-on-disciplinary-hearings (last visited Nov. 3, 2020). Notably, FINRA has

Finally, the public interest favors the injunction.  While the public interest favors proper pandemic procedures, there is no proper purpose served by suddenly deciding, after sixteen months, that Alpine must be relegated to an inadequate process.  The public interest benefits from continued adherence to principles of due process and fair procedures, particularly when closure of a business is sought as the country struggles with the pandemic. Therefore, because a virtual proceeding is unwarranted, unfair and a contravention of Alpine's rights, both as a FINRA member and under the U.S. Constitution, Alpine requests entry of an order enjoining FINRA from conducting the remainder of Alpine's Hearing virtually and enjoining FINRA from continuing the Hearing until it can be conducted in-person.

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## I.    STATEMENT OF FACTS

### A.    The Disciplinary Proceeding Against Alpine

Alpine is a broker-dealer and clearing firm, operating since 1984 in Salt Lake City, Utah. It currently resides in the former Salt Lake Stock and Mining Exchange building – a historic site – and has approximately 20 employees who live and/or work in the Salt Lake City area.  Alpine plays a critical role in the financial markets by providing liquidity to investors in small micro-cap issuers in the over-the-counter market and is one of only a few remaining small clearing firms that still participate in that microcap market.  Securities regulators strongly disfavor this segment of the securities market and have aggressively targeted smaller broker-dealers like Alpine through the vehicle of enforcement actions. Alpine Complaint ("Compl.") at 10, attached hereto as **Exhibit A**.

In August 2019, FINRA's DOE instituted a disciplinary proceeding against Alpine alleging that Alpine imposed excessive fees on its customers and thereby violated FINRA's requirement of

---

already confirmed that it is adjourning all in-person arbitration proceedings to January 2021, and could and should have taken the same position in relation to disciplinary matters

"reasonable" fees and its rules of conduct.  Compl. at 31. The basis for DOE's allegations stemmed from Alpine's decision in August 2018 to implement a new fee schedule including a monthly account fee, designed to address the dramatically increased compliance and transactional costs being imposed on the firm because of its participation in the microcap markets.  The fee schedule was intended to pare down Alpine's inactive accounts holding illiquid securities that imposed massive carrying costs on Alpine and severely restricted its ability to conduct transactions for its active customers. *Id*. at 32; Declaration by Maranda E. Fritz ("Fritz Decl."), filed concurrently, at 10.

To effectuate the change, and in accordance with industry rules concerning disclosure of fees, Alpine gave customers written notice in their August 2018 account statement that new fees had been adopted and would be implemented.  Alpine encouraged customers to close or transfer their accounts if they wanted not to incur the new fees.  From September 2018 through July of 2019, Alpine sent near monthly notices to their customers asking that they close their accounts and thereby avoid the monthly fee.  Compl. at 33, Fritz Decl. at 11.  In response to Alpine's notifications, many customers confirmed they did not want to be charged the fee, and Alpine agreed to waive the fee and return any funds collected if the customer agreed to close their account and remove their securities from Alpine. Compl. at 34-35. As of early 2019, however, Alpine was left with a substantial number of accounts held by customers who ignored or did not respond to the fee notice. *Id*. at 35.   Alpine began considering other options for addressing inactive, "orphaned," and worthless accounts.  In the process, Alpine also offered customers the opportunity to simply write-off their low-value positions.[3] *Id.*at 36.

---

[3] The write-off process involved selling the securities to Alpine for $0.01.  Alpine placed all securities written-off in this way into a single account and maintained records indicating from which customer each position was obtained, if Alpine had ever needed to reverse the write-off for any reason.

### B.  Alpine's Right to the Commencement of an In-Person Hearing

In the midst of Alpine's ongoing efforts to address inactive accounts, DOE commenced an investigation relating to Alpine's fees and process.  DOE then filed the disciplinary proceeding at issue here on August 5, 2019, seeking to expel Alpine from FINRA and bar it from participating in the securities industry.  Compl. at 37.  Under FINRA rules, Respondent was entitled to defend against those claims and "to be heard in person."  (FINRA Rule 9261). Compl. at 38.

At the time it initiated the disciplinary proceeding, DOE also sought a temporary cease and desist order that would require Alpine to return any funds collected from open accounts and return any securities transferred to any Alpine account in relation to the fee activity, and cease from charging the fees that had been updated in August 2018. Compl. at 39, Fritz Decl. at 16.  Given FINRA's concerns, Alpine voluntarily agreed to stop imposing fees and entered into an agreed-upon cease and desist order, agreeing to reverse transactions and reimburse customers pending resolution of the issues concerning Alpine's ability to impose fees.  In accordance with that agreement, Alpine then returned funds to customers' whose accounts remained open and reversed all securities transfers that had occurred as part of Alpine's efforts to close the inactive accounts. Compl. at 40, Fritz Decl. at 17.

Alpine answered DOE's complaint, denying many of the allegations therein and maintaining that the fees charged were reasonable given Alpine's unique circumstances as one of the only remaining broker-dealers dealing with microcap securities.  Alpine also sought the "in person" hearing guaranteed by FINRA Rule 9261, and the Hearing Officer ordered that the hearing be held in person in Salt Lake City.  The parties and the Hearing Officer understood that the proceeding would be lengthy and complex. DOE and Alpine both contemplated extensive presentations of witness testimony and thousands of pages of documents.  DOE identified seventeen different witnesses, including Alpine's three executives and five of Alpine's customers.  Alpine identified its own executives, as well as fourteen other witnesses including

customers. Compl. at 43, Fritz Decl. at 20. Before the start of the Hearing, DOE identified 254 exhibits, including excel files, email correspondence, account records, and summary charts.  Alpine identified another 245 exhibits before the start of the Hearing.  Compl. at 44, Fritz Decl. at 21.

Before the Hearing, DOE sought permission to have customer witnesses and one of Alpine's former directors, Richard Nummi, testify telephonically.  Alpine agreed to customer telephonic testimony but opposed Mr. Nummi testifying telephonically. Compl. at 45-46, Fritz Decl. at 22-23.

In that context, the parties submitted briefs regarding the use of remote testimony. Acknowledging the importance of an in-person presentation in this case, the Hearing Officer *denied* DOE's request to present testimony from Mr. Nummi telephonically because it would address "an issue important in this case" (i.e., the genesis of Alpine's fees) and thus outweighed "the burden and expense of requiring him to appear in person." Compl. at 47, Fritz Decl. at 24. The Hearing Officer's decision noted that the expected length of his testimony alone required in person testimony.  *Id.*

### C.    Enforcement Presents Much of Its Case In Person

The in-person Hearing began in Salt Lake City on February 18, 2020 and proceeded through Saturday, February 22, 2020.  Compl. at 48.   During that time, DOE presented testimony from six witnesses beginning with the firm examiner, Stacie Jungling.[4]  Her testimony lasted for three full days and covered most of DOE's case including the extensive analyses of Alpine's fees, its notifications to customers, and activity in customer accounts.  Compl. at 50.  DOE followed Ms. Jungling with other witnesses who testified for several hours each, reviewed and discussed detailed exhibits, and put forth DOE's evidence concerning alleged issues associated with Alpine's notices to its customers, the imposition of Alpine's fees, and the customers' reactions to the increases in fees.  Compl. at 51.

---

[4] Alpine was permitted to call one witness out of order because of scheduling issues.  He testified for less than three hours, including cross-examination.  Compl. at 52.

During the February 22 session, DOE began presentation of its seventh witness. Approximately one hour into testimony, Alpine's counsel was informed of an urgent family matter that required that she leave Utah. The Hearing Officer granted Alpine's request for an adjournment for this reason and DOE did not object.  Compl. at 53-54, Fritz Decl. at 33.

### D.   Further Postponement Due to COVID-19

The parties reconvened telephonically on March 12, 2020 to discuss scheduling, and the Hearing Officer ordered that the Hearing would resume in-person on April 30, 2020.  Within a matter of days, lockdowns and business shutdowns were imposed because of the spread of COVID 19.   Compl. at 55. On March 30, 2020, the Hearing Officer issued an order postponing the April 30 Hearing due to the COVID-19 pandemic. Subsequent adjournments followed after FINRA directed that all in-person proceedings were suspended.  Compl. at 56-57, Fritz Decl. at 35-36.

At the April 29, 2020 conference, the Hearing Officer advised DOE that she would not direct the hearing to proceed remotely unless DOE filed a formal motion.  Compl. at 58, Fritz Decl. at 38 and Ex. 4.  The Hearing Officer advised DOE it would have to file a motion and "layout your explanations as to how this really – I mean we have a lot of witnesses to hear from and this is a case with a lot of documents, so you need to be specific as to how and *why you think we can have a fair hearing and give respondent a fair opportunity to present their defense in a case like this while proceeding remotely."* Compl. at 63 (emphasis added), Fritz Decl. at Ex. 4 at 5. When DOE counsel pressed again to proceed by remote means, the Hearing Officer declined, stating: "Right now, I am not going to order the parties to proceed remotely on this hearing.  You can file a motion … I want us to agree to an alternative set of in-person dates." Compl. at 64, Fritz Decl. at Ex. 4 at 5

Alpine expressly objected to any continuation of the remainder of the Hearing by remote means given the complexity of the case, the importance and extensive use of documents, and the severity of the

penalty sought by FINRA.  There was no suggestion that any party would be ordered to proceed in that manner absent motions, briefing, and an opportunity to be heard on the issue.  Compl. at 60-61, Fritz Decl. at 40. *Notably, neither following the April conference nor since has DOE ever filed a motion to have the proceeding conclude through virtual presentations*. Fritz Decl. at 39.

The parties then agreed to alternative dates to resume the Hearing in-person, one starting July 7, 2020 and the other beginning August 5, 2020.  Compl. at 67, Fritz Decl. at 48.  As the pandemic continued, the Hearing Officer advised the parties that FINRA was developing a Zoom process to conduct hearings remotely as "an option" for the parties and directed Alpine and DOE to consider the presentation of testimony by remote means. Compl. at 68-69, Fritz Decl. at 40.  Alpine, in response, reiterated that it would not consent to proceed through the "document intensive" and critical remainder of the proceeding entirely by remote means.  Compl. at 70, Fritz Decl. at 51.

The Hearing Officer indicated this would not be ordered, but encouraged the parties to consider the presentation of at least *some* witnesses by virtual means to advance the proceeding.  The Hearing Officer also ordered the parties to participate in an off-the-record test run on the Zoom platform, which occurred on June 18, 2020. Fritz Decl. at 53.  That Zoom test run was not without difficulty.  During the presentation of documents, for example, the video frame displaying the witness is reduced to a thumb nail, making it difficult if not impossible to view the witness's reaction and demeanor.  The parties also encountered difficulties zooming in on documents and using annotation features to draw the witness's attention to particular sections of documents.   Fritz Decl. at 54-57.

At the July 2, 2020 status conference, the Hearing Officer advised that FINRA had further postponed in-person hearings and was establishing a single facility at which in-person hearings would

proceed. When the Hearing resumed, she added, it would likely be at a FINRA location in the Washington, D.C. area. Compl. at 79, Fritz Decl. at 60.[5]

On July 6, 2020, the Hearing Officer issued an order setting the Hearing to resume in-person on September 16, 2020 and setting a motion schedule to consider DOE's motion that the parties conduct remote testimony of two specific witnesses. Compl. at 82. On July 15, 2020, DOE filed that motion seeking permission (again) to present Mr. Nummi's testimony telephonically and to present testimony of Robert Ishak remotely. Far from basing its motion on any urgent need to resume the Hearing generally, DOE claimed only that Mr. Ishak had unique personal circumstances preventing him from traveling. Mr. Nummi, DOE claimed, would soon no longer be subject to FINRA's jurisdiction and, thereafter, it would be impossible to compel his testimony. Fritz Decl. at 68.

The Hearing Officer then conducted a further status conference on July 20, 2020. At no point did she suggest that the Hearing would be ordered to proceed entirely by virtual means. In fact, the opposite was discussed. DOE inquired whether additional "in-person" dates should be selected for later in the year given FINRA's proposal that all in-person hearings would proceed in one central location. The Hearing Officer rejected this request. Compl. at 86-88. Fritz Decl. at 70-73.

Another status conference was held on July 30, 2020, in which the Hearing Officer considered and granted DOE's motion to present remote testimony of *only* Mr. Nummi and Mr. Ishak. In that conference, the parties also agreed to another tentative date to resume the Hearing in-person on November 30, 2020, and the Hearing Officer again advised that in-person hearings would likely take place in a central

---

[5] FINRA did, in fact, create such a location, and advertises its availability and usefulness, as well as the health and safety protocols in place, on its website. Those protocols include a space "large enough to allow social distancing," clean and sanitized rooms and workstations, separate break out rooms, microphones and displays for witness and evidentiary presentations, and plexiglass dividers between the parties. *See https://www.finra.org/rules-guidance/key-topics/covid-19/hearings/impact-on-disciplinary-hearings*

4852-2702-2289.v1

location near Washington, D.C.   DOE asked what would occur if a participant for the Hearing was traveling to the in-person hearing from a state with a mandatory quarantine. The Hearing Officer stated that, "We would probably postpone the hearing."[6]   Fritz Decl. at 74-78.

### E.   The Parties Proceed with Limited Remote Testimony for Some Witnesses

In August, the parties took remote testimony from two of FINRA's customer witnesses, FINRA's employee Mr. Ishak, Mr. Nummi, and one of Alpine's former employees, Randall Jones, whom Alpine agreed could testify remotely. None of the witnesses' testimony was longer than a few hours and only a handful of documents were introduced.  Compl. at 101-102, Fritz Decl. at 88.

During Alpine's cross-examination, witnesses repeatedly indicated they could not hear Alpine's counsel, required questions to be repeated, and had difficulty navigating the exhibits presented.  The court reporter had to ask both parties' counsel to repeat questions and objections, and for the Hearing Officer to repeat rulings on those objections. During the testimony of Mr. Nummi, the connection timed-out and the parties had to wait several minutes for him to rejoin, at which point the substantive topic had to be re-explored. Compl. at 103-104, Fritz Decl. at 89-92.

In addition to these technical issues, Alpine also observed a noted difference in the Hearing Panel's participation in the proceedings.  During the in-person presentation of DOE's witnesses, the Hearing panelists regularly asked their own important questions of the witnesses, pressing them on key issues relevant to both DOE's case and Alpine's defense.  Indeed, Alpine's CEO, who was present for the in-person and remote portions of the Hearing, observed this firsthand, including that the Hearing panelists

---

[6] The Hearing Officer explained that FINRA intended to check the public health situation in the jurisdiction for the hearing, as well as the jurisdictions of each participant at least six weeks prior to the hearing start date and it would make a determination "whether we have the potential to go forward….it's possible that FINRA would have to cancel…So at the six point [sic] mark we make a call and the call would either be yes or no…So each week it's subject to potentially being postponed." Fritz Decl. at 79.

nodded along with the testimony, actively reviewed documents and posed questions, and generally sought to fully participate in the proceedings. *See* Declaration of Christopher Doubek, at 30-37, filed concurrently. Conversely, during the remote sessions, the Hearing panelists ask few questions of the witnesses and presumably struggled, as Alpine and the other participants did, to hear the testimony and fully review and understand the documents in the context of each witness's testimony. *Id*. at 42-50. In short, the process was problematic and reinforced Alpine's concerns that certain issues may not have been fully captured on the record.

F.      **FINRA *Sua Sponte* Orders the Hearing to Proceed Remotely**

The Hearing Officer issued an order on September 18, 2020 setting a status conference for November 2, 2020 to prepare for the in-person Hearing set to resume in the Washington D.C. area on November 30, 2020. Compl. at 107, Fritz Decl. at 94, Ex. 11. On November 2, 2020, and prior to the parties' scheduled status conference, without any FINRA motion or Alpine having an opportunity to be heard, FINRA's Chief Hearing Officer Maureen Delaney issued a generic order directing the remainder of Alpine's Hearing to proceed on Zoom on November 30, 2020 (the "Zoom Order"). Fritz Decl. at 95. It made no reference to any specific aspects of the case or to the Hearing Officer's repeated rejection of DOE's suggestion that it proceed remotely. According to the Zoom Order, the Chief Hearing Officer's decision was based on SR-FINRA-2020-027, a temporary amendment to FINRA Rule 9261 (the "Zoom Amendment"). The Zoom Order fails to consider any of the unique circumstances of this Hearing that, as the Hearing Officer had observed, make it difficult to proceed by virtual means while ensuring Alpine's right to a fair procedure. Compl. at 108, Ex. 1 thereto.

On November 3, 2020, the Hearing Officer issued an order implementing the Zoom Order and directing the parties to resume the Hearing on November 30, 2020 by videoconference on Zoom (the "November 3 Order"). Compl. at 110, Ex. 2 thereto.

## II.   <u>ARGUMENT</u>

A preliminary injunction may be issued under Rule 65(a) of the Federal Rules of Civil Procedure when the movant establishes "'(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.'" *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F.Supp.2d 1191, 1197 (D. Utah 2014) (citation omitted). "Where the moving party can show that the second, third, and fourth factors 'tip strongly in [its] favor,' the first factor is satisfied 'by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Utah Rep. Party v. Herbert*, 133 F. Supp. 3d 1337, 1346 (D. Utah 2015).

### A.   <u>Alpine Has a Likelihood of Success on the Merits And Raises a Substantial Question On the Merits.</u>

With respect to likelihood of success, the Tenth Circuit has explained that:

> [t]he very purpose of an injunction under Rule 65(a) is to give temporary relief based on a *preliminary estimate* of the strength of the plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case. Although the courts use a bewildering variety of formulations of the need for showing some likelihood of success, all courts agree that plaintiff must present a prima facie case but *need not show a certainty of winning*.

*Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (emphases added) (internal alternation, quotations and citations omitted). As discussed below, FINRA is acting in violation of its agreement with Alpine to provide it with an in-person hearing where it faces disciplinary charges and the most severe of sanctions.  Equally plain is that a remote proceeding would be unfair, and thus violate statutory requirements for a "fair procedure" in disciplinary proceedings, 15 U.S.C. § 78o-3(b)(8), and due process:  if the Zoom Order remains in place, DOE would have had the benefit of presenting its case in person but Alpine would be forced to deal with the vagaries and

inadequacies of remote technology while also trying to present its defense either with its counsel and witnesses in different locations throughout the country, or with its counsel trying to navigate the pandemic and travel to pandemic hotspots.   And this will be occurring in the context of a case where there is no need to press ahead at this point, and in which FINRA seeks the regulatory equivalent of a death penalty proceeding.   There is no basis or excuse for not affording a litigant a full and fair process when so much is at stake.

That leaves only the question of whether FINRA's reliance on its brand new, "immediately effective" "temporary" Zoom amendment somehow insulates it from these claims and permits it to disregard all of those considerations for the sake of moving forward right now with the remainder of the Alpine hearing.   As detailed below, it does not.

### 1.      FINRA May Not Deprive a Member of the Right to An In-Person Hearing Guaranteed by its By-Laws and FINRA Rules

Pursuant to the Exchange Act and subsequent legislation, FINRA has received authorization to perform the critical and deeply impactful function of regulating the conduct of participants in the securities industry.   Initially, under the Exchange Act, the ability to punish someone for a violation of the securities laws was a purely governmental function, delegated by Congress to the Commission.   Responsibility for oversight of industry participants was restructured by the Maloney Act, Pub. L. No. 75-719, 52 Stat. 1070 (1938), which amended the Exchange Act to enable the Commission to register national securities exchanges or national securities associations as self-regulatory organizations (SROs) that would, in turn, exercise oversight of the securities industry participants like broker-dealers and clearing firms. By virtue of the Maloney Act, Congress express delegated to those SROs the traditionally governmental function of enforcing provisions of the Exchange Act and the Commission's regulations promulgated thereunder, subject to strict Commission oversight.

14

The Exchange Act also requires broker-dealers and clearing firms, like Alpine, to be a registered member of an SRO in order to conduct business in the securities industry.  15 U.S.C. §§ 78o(a)-(b). Since the merger of the NASD with the regulatory branch of the New York Stock Exchange in the early 2000s, FINRA was and is the *only* securities association registered as an SRO with the Commission. Therefore, Alpine and, indeed, any broker or dealer that wishes to conduct business in the securities industry, *must* be a FINRA member.  *See* 15 U.S.C. § 78o(a).

The Maloney Act also set forth the comprehensive statutory rules that dictate how SROs form and how they must function.  Specifically, to become a registered SRO, as FINRA is, it was required to file with the Commission an application for registration that includes all of the rules of the association that will govern its members' conduct and its regulation of members. *See* 15 U.S.C. § 78o-3(a).  An association must agree to "comply with the [Exchange Act] and its own rules," (*id.* § 78s(g)(1)(A)) and it must "enforce compliance . . . by its members and persons associated with its members." *Id.; see also* 15 U.S.C. § 78s(h).

Among other things, the SRO's rules must provide for the "appropriate discipline" of any member for violations of the Exchange Act, the rules of the Commission, or the rules of the SRO through appropriate sanctions.  15 U.S.C. § 78o-3(b)(7).  To effectuate this, the SRO's rules must provide for "a fair procedure" for such discipline to be carried out. *Id.* § 78o-3(b)(8).  Disciplinary proceedings must "give [the member] an opportunity to defend against" charges. *Id.* § 78o-3(h).[7]

---

[7] Once registered as an SRO, the SRO is subject to extensive oversight and control by the Commission. *See, e.g.,* 15 U.S.C. § 78s(b).  That oversight includes review and approval of all SRO rules by the Commission, and the Commission's right to unilaterally reject, amend, or abrogate any rule proposed by or promulgated by FINRA (*see id.* § 78s(c)). Similarly, the procedures and rules governing conduct of FINRA's disciplinary proceedings are subject to oversight by the Commission to ensure compliance with the requirements of the Exchange Act, the Commission's rules thereunder, and the SRO's rules. *See id.* § 78s(d)-(e).

To comply with the requirement that FINRA provide to members a fair disciplinary procedure, the Commission approved FINRA rules that specifically granted a Respondent a right to defend against disciplinary charges in *an in-person proceeding*.  *See* FINRA Rule 9261.[8] At all times, up to and including the present, that rule has been interpreted to ensure that a respondent will receive an in-person hearing at a location to be set by the Hearing Officer assigned to the matter.

The recently constructed Zoom process does not constitute the fair procedure or in-person hearing that has long been the requirement under the rules.  Implementation of such substantive changes, including deprivation of the right to an in-person hearing, *midstream in this proceeding and thus retroactively*, does not constitute fair process and in fact only serves to exacerbate the advantage to DOE and the damage to Alpine.  The Zoom Order does not comport with the rights promised to Alpine and in effect at the time of the initiation of this proceeding.

        **2.**      **Forcing Alpine to Proceed Remotely Under the Circumstances of This Case Constitutes a Violation of Due Process of Law**

All aspects of FINRA's authority to regulate its members, to take enforcement action against them to ensure compliance, and to sanction those members derives from the Exchange Act and is subject to the Commission's own oversight. Because FINRA, in imposing discipline on members and enforcing provisions of the securities laws regulations, is serving a governmental function and acting as an agent of the Federal Government, it is a state actor and is subject to the requirement that it provide due process of law to those who would be deprived of their livelihood and property. *See, e.g.*, *Rooms v. SEC*, 444 F.3d 1208, 1214 (10th Cir. 2006) (holding that "[d]ue process requires" the NASD, FINRA's predecessor, to

---

[8] As stated in the Notice of Rule Change, "FINRA Rule 9261(b) states that if a disciplinary hearing is held, a party shall be entitled to be heard in person, by counsel, or by the party's representative. Absent an agreement by all parties to proceed in another manner, OHO conducts disciplinary hearings in-person." Compl. at Ex. 3.

give parties fair notice prior to disciplining them) (citing *Handley Inv. Co. v. SEC*, 354 F.2d 64, 66 (10th Cir. 1965)). And this makes sense, for as the D.C. Circuit has observed:

> NASD's disciplinary process essentially supplants a disciplinary action that might otherwise start with a hearing before an [SEC] ALJ. And NASD's authority to discipline its members for violations of federal securities law is entirely derivative. The authority it exercises ultimately belongs to the SEC ....

*National Ass'n of Securities Dealers v. S.E.C.*, 431 F.3d 803, 806 (D.C. Cir. 2005).[9]

FINRA has previously argued, and may claim in this proceeding, that it is not a state actor and so need not provide due process of law to respondents, regardless of whether the respondent is being threatened with deprivation of property. That issue was considered in the recent decision in *Legaspy v. FINRA*, 2020 U.S. Dist. LEXIS 145735 (N.D. Ill. August 13, 2020), in which a plaintiff in a FINRA arbitration was ordered to proceed virtually. That plaintiff filed suit in federal court, arguing that FINRA thereby breached its Code of Arbitration Procedure. The plaintiff also asserted that the remote proceedings would be "cumbersome and irregular" and would violate due process of law. After finding the claims regarding arbitration to be deficient, based on provisions of the Federal Arbitration Act, the court turned to the due process claim and noted that FINRA is not a state actor and does not have to provide due process of law in FINRA proceedings. *Id.* at *9.

The *Legasby* case, while it considered a superficially similar issue, is plainly distinguishable. Regardless of whether FINRA, in its *arbitration* function (where it merely provides a forum for private disputes), has any due process obligations, in *this Circuit* FINRA is subject to federal due process requirements when it acts pursuant to its delegated authority to discipline industry members and when it seeks to deprive those members of livelihood and property. *Rooms,* 444 F.3d at 1214. In its role here,

---

[9] *accord Free Enterprise Fund v. PCAOB,* 561 U.S. 477, 527 (Breyer, J. dissenting) (observing that SROs – "which rely on private financing and on officers drawn from the private sector – exercise rulemaking and adjudicatory authority that is pervasively controlled by, and in indeed 'entirely derivative' of, the SEC." (citing *NASD, supra*).

FINRA must provide procedural safeguards, consistent with due process, including notice and an opportunity to be heard, and may not deprive respondents of the ability to confront and present witnesses, or the right to effective assistance of counsel. The remote proceeding is inadequate to secure those rights, and OHO's *sua sponte* changing of the Hearing from in person to remote, without first giving Alpine an opportunity to be heard and respond, flies in the face of due process.   Moreover, due process requires a fair trial which, at the very least, requires uniformity in the manner in which the parties are allowed to present their cases.  It does not permit FINRA to present its case in person, while not allowing the Alpine the same opportunity.

Having been imbued by Congress with the ability to assert charges against its members, and to impose sanctions that deprive them of their livelihood or their property, FINRA cannot constitutionally be permitted to act with impunity and in disregard of basic constitutional protections.

### 3.   The Zoom Amendment Does Not Permit FINRA to Violate Alpine's Rights to Fair Process, Including an In Person Hearing

After decades of affording a respondent the right to defend itself in in person hearings, FINRA has now decided that FINRA's Chief or Deputy Chief Hearing Officer can, unilaterally and *sua sponte*, deprive a respondent of that right.  To accomplish that end, FINRA prepared and issued the Zoom Amendment, filed with the Commission on August 31, 2020.  Notwithstanding that it strips respondents of critical rights, FINRA also denoted the Amendment as a "non-controversial" proposed rule change under 15 U.S.C. § 78s(b)(3)(A)(iii) and 17 C.F.R. § 240.19b-4(f)(6) *that would take effect immediately*, without waiting for Commission approval or public comment, on October 1, 2020.

As reflected in those filings, FINRA has unilaterally decided that remote proceedings are "consistent with Section 15A(b)(8) of the Act, which requires, among other things, that FINRA rules provide a fair procedure for the disciplining of members …." (*See* Ex. 3, at 55,715).  In terms of the scope

of its "immediately effective" and purportedly "noncontroversial" rule change, FINRA has decided that it can unilaterally order that remote proceedings occur in any instance in which it concludes that an "in-person hearing would compromise the health and safety of the hearing participants." (*Id.*) FINRA claims that "the temporary proposed rule change allowing TCDO hearings to be conducted by video conference is vitally important, as it will enable FINRA to take immediate action to stop significant, ongoing customer harm." (*Id.*)

FINRA's purported justifications for the procedure and the substance of its Zoom Amendment are flawed, unfair to members and respondents, and invalid. First, there exists no proper basis for FINRA's declaration that the rule is noncontroversial and thus immediately effective. FINRA points to Section 78s(b)(3)(A)(iii) as its support for being able to impose the rule without any review or approval by the SEC. But that provision refers only to rule changes that are designated by FINRA as "concerned solely with the administration of the [SRO]." Notably, the phrase "non-controversial" appears nowhere in the statute. A rule that dealt solely with administrative matters might fall within that provision; a rule that deprives a respondent of substantial rights does not.

Similarly, the Zoom Amendment, which amends the procedures that govern disciplinary proceedings (FINRA Rule 9261), does not qualify for immediate effectiveness under SEC Rule 19b-4, 17 C.F.R. § 240.19b-4. The SEC Release that adopted the relevant amendments to Rule 19b-4 to allow for "immediate effective" rule filings in certain circumstances states, "for policy reasons, a proposed rule change that would reduce public representation in the administration of the affairs of an SRO or that would ***amend the procedures for arbitration or disciplinary proceedings would not be a proper candidate to become effective under Section 19(b)(3)(A).***"[10]

---

[10] *See* Securities Exchange Act Release No. 43-35123 (December 20, 1994) (emphasis added), available at https://www.sec.gov/rules/final/19b4.txt

Additionally, FINRA's designation of the Zoom Amendment as immediately effective, supposedly because it does not affect the public interest or impose any burden on competition, is patently erroneous.  First, the public interest is not served by changes to disciplinary proceeding procedures that enable FINRA to strip a respondent of property rights without the due process of law that has been the norm for decades.  Further, the public interest is not served by moving forward to try to shut down a business in the midst of a pandemic.  To the contrary, the federal government has repeatedly, including through executive orders, noted the importance of keeping businesses open and operating, and encouraged regulators to take steps *to ensure and enhance the due process protections* afforded to litigants in regulatory enforcement proceedings.[11]

The Notice of Proposed Rule Change for the Zoom Amendment also lacks any proper consideration of the rights of respondents.  While is properly addresses the health of the participants, it advances that interest without any consideration of the impact of the Zoom Amendment on members' rights, or consideration of the alternatives that would safeguard the health of participants without running roughshod over the rights of respondents.  Further, FINRA has improperly rushed to a one-size-fits-all proposal. It claims it should be able to Zoom through disciplinary proceedings because "it will enable FINRA to take immediate action to stop significant, ongoing customer harm."  But that is not an issue here.  FINRA and Alpine long ago agreed on a cease and desist order that would ensure no ongoing impact to its customers.  While FINRA could have, and should have, provided that a finding of imminent harm

---

[11] *See* Executive Order 13924, §§ 1, and 6 (May 19, 2020) (issued in response to the COVID-19 pandemic and requiring, *inter alia, "*fairness in administrative enforcement and adjudication."); Executive Order 13892, § 6 (October 15, 2019) (requiring that, "*before* an agency takes any action with respect to a particular person that has legal consequences for that person … the agency must afford that person an opportunity to be heard, *in person* or in writing, regarding the agency's proposed legal and factual determinations") (emphasis added); *see also id.* at § 1 (requiring agencies to provide "safeguards" to regulated parties "beyond those the courts have interpreted the Due Process Clause of the Fifth Amendment to the Constitution to impose.").

would be the prerequisite for this *ex post facto* alteration of respondent's rights, it did not.  Its rule sweeps too broadly, inflicting irreparable harm on Alpine where no corresponding issue of customer harm exists.

### 4.    Application of the Zoom Amendment to Alpine is Impermissible

Even if the Zoom Amendment were a permissible exercise of FINRA's authority, it is being impermissibly applied in this case.  First, because this proceeding was initiated more than a year ago, the application of the rule contravenes the principles against *ex post facto* and retroactive application.  "Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988).  "[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*  Not only is Alpine aware of *no* express grant of authority for FINRA to enact rules with a retroactive effect, but, as indicated, the SEC has stated that the immediate effective rulemaking process is not even available to amend procedures for disciplinary proceedings.

The application of the rule in this case is particularly egregious because it is also obviously inequitable.  DOE was able to present its detailed and complex presentation in the presence of the panel and with all participants in the same room.  Now, when Alpine must respond to those charges, FINRA seeks to hamstring Alpine.  The rule should not be unilaterally changed by FINRA where, as here, the proceeding and Hearing is already underway.

The blanket Zoom Amendment, and the Chief Hearing Officer's Zoom Order, also ignores the fact that the Hearing Officer had ruled that Alpine would not be forced to proceed remotely, at least not without DOE demonstrating how Alpine could get a fair hearing in a video proceeding.  The Zoom Order simply nullified that ruling through general pronouncement, without consideration of any of unique circumstances of this case.  The Hearing Officer is the one who has seen first hand the room full of exhibits, and heard the detailed and complex testimony involved in the case, and fully appreciates both

the importance of the presentation of evidence and the fact that Alpine's ability to remain in business is at stake.  The Hearing Officer herself had acknowledged the difficulty of proceeding with this particular Hearing by virtual means given the breadth and importance of remaining witness testimony and documentary evidence.  As indicated above, those concerns were not alleviated during the Zoom test run or limited remote testimony that was taken.  The about-face directly contradicts assurances from the Hearing Officer that the issue would be decided only if DOE brought a formal motion, and inures to the substantial detriment and prejudice of Alpine.  Alpine was not afforded any opportunity to object to the Zoom Order or the November 3 Order, and such interlocutory decisions are not appealable under FINRA's rules.

**B.      Plaintiffs are Suffering and Will Continue to Suffer Irreparable Harm Absent the Requested Injunctive Relief.**

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . ." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citations omitted). Irreparable harm "may be based on factors such as the 'difficulty in calculating damages ... and [the] existence of intangible harms such as loss of goodwill or competitive market position.'" *See MonaVie, LLC*, 2011 WL 1233274, *4 (D. Utah, March 31, 2011) (citation omitted).  Importantly, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Awad v. Ziriax,* 670 F.3d 1111, 1131 (10th Cir.2012).

Here, the fact that Alpine will suffer irreparable harm if forced to proceed via Zoom is evident. Courts, judges and attorneys have long ago concluded that trial proceedings should be conducted in person for a host of reasons including the importance of a fact finder's ability to assess and evaluate witnesses, to receive and process the evidence, and ensure that the proceedings are at all times fair and impartial.

22

FINRA has now moved precipitously to strip away those rights, and proceed remotely.  By this proceeding, FINRA seeks to force the closure of Alpine, ending its business after more than 35 years of operation.  In the meantime, Alpine has no means – other than this Court – to obtain relief.  The Zoom Order is not appealable and so there is no process within FINRA to obtain any review of this unprecedented action.  The rule itself has not been reviewed or approved by the SEC; it is still undergoing notice and comment, and so there is no means to meaningfully challenge the amendment.[12] And even if there were a means by which to present a claim to the SEC that the rule should not be "immediately effective" and is invalid, the only means by which to assert that claim would take far longer than the approximately three weeks that Alpine has before the hearing resumes. Only a stay of the proceeding will enable Alpine to obtain fair consideration of these issues.[13]

**C.     The Balance of Equities Tips in Favor of Plaintiffs' Request for Preliminary Injunctive Relief.**

In determining whether to grant an injunction, consideration must be given to whether the defendant would suffer greater harm than the plaintiff if the requested injunctive relief is granted. *See Davis v. Minetta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Here, the equities weigh strongly in favor of granting Alpine the requested injunctive relief. While Alpine will suffer a violation of its rights and significant irreparable harm if this matter proceeds apace, the defendant will suffer no harm if the matter

---

[12] *See* 15 U.S.C. § 78s(b)(3)(C) (stating that "Commission action" on an immediately effective rule change "shall not be reviewable under section 78y . . . nor deemed to be 'final agency action' for the purposes of [the APA]."); *NetCoalition v. S.E.C.*, 715 F.3d 342, 353 (D.C. Cir. 2013) ("We make clear that section 19(b)(3)(C) imposes a *jurisdictional* bar to our review of the Commission's decision not to suspend a proposed rule change.").

[13]  Alpine has previously attempted to obtain relief through petitions to the SEC to challenge rules, and has even sought interim relief, but the SEC does not have a process by which Alpine can obtain expedited consideration of a stay application. In one instance, a stay of a FINRA proceeding was sought but Alpine could not obtain any review of that petition in the weeks leading to the proceeding.

If this Court is of the view that Alpine should seek relief from the Commission, Alpine requests that the Court issue a stay of the proceeding pending the SEC's consideration of Alpine's application so that Alpine is not confronted with an inability to get any response from the SEC in the relevant time frame.

is adjourned until in person proceedings can resume.  The proceeding has already continued for approximately eighteen months, with Alpine operating under the cease and desist order and with no ongoing harm to its customers.  FINRA does not even seek any relief, in addition to the cease and desist, in relation to customers, except for the request that Alpine provide reimbursements of collected fees to closed accounts.  DOE has presented no evidence that any customer has incurred any damages.  In fact, Alpine has effectively eliminating all retail accounts, and so no longer imposes the kinds of fees at issue in the FINRA proceeding.

### D.   Issuance of Injunctive Relief is in the Public Interest.

To prevail on this element, Plaintiffs need only establish that injunctive relief will not be adverse to the public interest. *See City of Chanute v. Kansas Gas & Elec. Co.*, 754 F.2d 310, 312 (10th Cir. 1985). The public interest, particularly in this moment, favors affording due process to businesses, and not seeking to shutter businesses that have managed to continue to operate and provide employment during the pandemic.

There is no countervailing public concern that would outweigh the interest in affording due process to a business in these economic circumstances, and the right to present its case on a fair and equal footing to DOE.  Alpine is not seeking a blanket prohibition on Zoom hearings; it is seeking a ruling predicated on the precise and unique circumstances of this case.  Here:

- The proceeding is a disciplinary matter in which FINRA plainly exercises traditionally governmental functions delegated to it and so is subject to due process requirements;

- The proceeding was initiated prior to current events and should not have the rules of the road changed in midstream, particularly where DOE has already had the advantage of presenting its evidence in person;

- The proceeding is particularly complex and document intensive, with lengthy periods of financial and documentary analysis, and because of the extensive use of documents, the testifying witness in a remote proceeding would be viewed only in a thumbnail view, making it impossible to assess any of the witness' demeanor or credibility by

24

virtual means;

• the Hearing Officer has considered the issue of remote testimony and had determined that Alpine would not be forced to proceed remotely without a motion and an opportunity to be heard because DOE would have to articulate how Alpine could obtain a fair proceeding.

It is because of *these* circumstances that the Court should enjoin a remote proceeding until FINRA's unprecedented steps can be evaluated by the Court.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this Motion and enter an order enjoining FINRA from conducting the remainder of Alpine's Hearing virtually and enjoining FINRA from continuing the Hearing until it can be conducted in-person.

DATED this 10th day of November, 2020.

**PARSONS BEHLE AND LATIMER**

/s/ *Aaron D. Lebenta*
Aaron D. Lebenta
*Counsel for Plaintiff*

4852-2702-2289.v1

## <u>CERTIFICATE OF SERVICE</u>

On this 10th day of November 2020, I hereby certify that I electronically filed the foregoing

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** with the Clerk of the Court

using the CM/ECF system and served:

**Via E-Mail:**

- Savvas.Foukas@finra.org
- Kevin.Hartzell@finra.org
- Pearline.Hong@finra.org
- Douglas.Ramsey@finra.org
- Daniel.Hibshoosh@finra.org
- Christina.Stanland@finra.org
- Gina.Petrocelli@finra.org
- Christopher.Kelly@finra.org
- Amanda.Fein@finra.org
- Lisa.Colone@finra.org

**Original to be served by a process server at:**

Financial Industry Regulatory Authority, Inc.
c/o Corporate Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808


DATED this 10th day of November 2020.


/s/ Aaron D. Lebenta

4852-2702-2289.v1