Clint R. Hansen, #12108
Kevin N. Anderson, #100
**FABIAN VANCOTT**
215 South State Street, Ste. 1200
Salt Lake City, Utah 84151
Telephone: (801) 531-8900
chansen@fabianvancott.com
kanderson@fabianvancott.com

Gregory A. Davis (*Pro Hac Vice*)
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Ste. 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4033
gregory.davis@squirepb.com
*Attorneys for Financial Industry Regulatory*
*Authority, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ALPINE SECURITIES CORPORATION, a Utah Corporation, | Case No: 2:20-cv-00794-DBB-DBP |
| Plaintiff, | **MOTION TO DISMISS** |
| vs. | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, a Delaware corporation, | District Judge David Barlow Magistrate Judge Dustin B. Pead |
| Defendant. | |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Financial Industry

Regulatory Authority, Inc. ("FINRA"), though its counsel of record, hereby moves to dismiss all

claims of Alpine Securities Corporation ("Alpine").

**Introduction**

FINRA brought a disciplinary proceeding alleging that its member Alpine stole millions of dollars from its customers.[1] The COVID-19 pandemic ensued as the hearings in that proceeding were in progress. FINRA adopted and filed a rule change temporarily allowing virtual hearings, and scheduled a virtual hearing in the Alpine proceeding.[2] In response, Alpine filed this action, through which it seeks to (1) dictate how evidence can be presented in the disciplinary hearing and (2) invalidate a temporary amendment (the "Temporary Amendment") to FINRA Rule 9261 ("Rule 9261") allowing for the consideration of remote testimony during the COVID-19 pandemic.[3] In so doing, Alpine impermissibly seeks to bypass the entire comprehensive administrative review process established by Congress in the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*. (the "Exchange Act").

This action fails for lack of subject-matter jurisdiction, just as the two prior attempts of Alpine's affiliate, Scottsdale Capital Advisors Corp. ("SCA"),[4] to interfere with a FINRA disciplinary hearing failed for lack of subject-matter jurisdiction. *See Scottsdale Capital Advisors Corp. v. FINRA*, 844 F.3d 414, 424 (4th Cir. 2016) ("*Scottsdale I*"); *Scottsdale Capital Advisors Corp. v. FINRA*, 811 F. App'x. 667, 667 (D.C. Cir. 2020) ("*Scottsdale II*"). Congress, through the Exchange Act, stripped federal district courts of subject-matter jurisdiction over claims involving

---

[1] *See* Complaint (Dkt. No. 2) ¶¶ 2–3; *see also* Department of Enforcement First Amended Complaint ("DOE Complaint"), attached hereto as **Exhibit A**, ¶¶ 1–6, 21, 39, 67, 88, 99, 106. The DOE Complaint is "referred to in and central to the complaint," and thus may be considered on a motion to dismiss. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

[2] *See* Complaint (Dkt. No. 2) ¶ 5.

[3] *See* Complaint (Dkt. No. 2) ¶ 9.

[4] Alpine and Scottsdale Capital Advisors Corp. are each directly or indirectly owned and operated by John Hurry.

FINRA disciplinary proceedings. *See Scottsdale I*, 844 F.3d at 424 ("Congress, through the Exchange Act, intended to channel objections to FINRA's authority through the agency and the courts of appeals. In so doing, it is clear Congress sought to preclude federal district-court jurisdiction."); *Scottsdale II*, 811 F. App'x. at 667 ("The [Exchange] Act does not provide federal district courts with any role in adjudicating disputes between FINRA and its members."). Any dispute Alpine has regarding its ongoing FINRA disciplinary hearing must be routed through the Exchange Act's comprehensive administrative review process, which includes (1) a full hearing before a FINRA hearing panel, (2) an appeal of the hearing panel's final decision to FINRA's National Adjudicatory Council ("NAC"), (3) a subsequent *de novo* appeal to the Securities and Exchange Commission ("SEC"), and (4) another appeal to the United States Court of Appeals. *See* FINRA Rules 9211(a), 9311, 9370; 15 U.S.C. § 78s(d)(2); 15 U.S.C. § 78y(a)(1).

All of Alpine's claims can also be dismissed for failure to state a claim because there is no private right of action against FINRA for violation of its own rules or the Exchange Act, and FINRA is "absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties." *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008); *Turbeville v. FINRA*, 874 F.3d 1268, 1276 (11th Cir. 2017) ("Congress did not intend to create a private right of action for plaintiffs seeking to sue [FINRA] for violations of [its] own internal rules.").

Alpine's claims also each fail for additional independent substantive reasons. The due process claim (Count II) fails because FINRA is not a state actor against which constitutional claims can be asserted. *See Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) ("The NASD [FINRA's predecessor] is a private actor, not a state actor."). The declaratory judgment claims

(Counts I and IV) fail because (1) the Office of Hearing Officers ("OHO") Chief Hearing Officer complied with Rule 9261 when she originally ordered that the remainder of Alpine's disciplinary proceeding be conducted remotely, and (2) Alpine's allegation that the Temporary Amendment was promulgated in violation of the Exchange Act is wholly conclusory.[5] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The injunctive relief claim (Count III) fails due to the absence of irreparable harm, which Alpine admits. [*See* Notice of Withdrawal of Plaintiff's Motion for Preliminary Injunction (Dkt. No. 23).]

**Background**

## I.    FINRA Has An Essential Role In Regulating The Securities Industry And Disciplining Its Members.

Through the Exchange Act, Congress established a comprehensive statutory plan for "cooperative regulation" of the securities market, "under which self-regulatory organizations [('SROs')] would exercise a primary supervisory role subject to ultimate SEC control." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213–14 (9th Cir. 1998), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562 (2016). Any person desiring to use any instrumentality of interstate commerce to sell securities must join an association of broker dealers registered as a national securities association. 15 U.S.C. § 78o(a)(1), (b)(1). FINRA, previously known as the National Association of Securities Dealers ("NASD"), is a private not-for-profit SRO, which since 1939 has been the only registered national securities

---

[5] *See* Complaint (Dkt. No. 2) ¶ 192.

3

association in the United States. *See Turbeville*, 874 F.3d at 1270 n.2. For FINRA to register as a national securities association and SRO under the Exchange Act, the SEC approved FINRA's By-Laws, which contain FINRA's authority to adopt rules governing FINRA members and amendments to those rules. 15 U.S.C. §78s(b); *see also* FINRA By-Laws, Art. XI, Sec. 1 (https://www.finra.org/rules-guidance/rulebooks/corporate-organization/article-xi-rules)      (last visited December 9, 2020).

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA is also required by the Exchange Act to "enforce compliance by its members and persons associated with its members," and to "appropriately discipline[]" such persons for violation of FINRA's rules or the Exchange Act. 15 U.S.C. § 78o-3(b)(2), (7).

Pursuant to FINRA's mandate to discipline its members, FINRA's rules establish a "multi-layered hearing and appeals process that governs disciplinary actions against FINRA-affiliated brokers and dealers." *Turbeville*, 874 F.3d at 1271. That process includes (1) a full hearing before a FINRA hearing panel, (2) an appeal of the hearing panel's final decision to FINRA's NAC, (3) a subsequent *de novo* appeal to the SEC, and (4) another appeal to the United States Court of Appeals. *See* FINRA Rules 9211(a), 9311, 9370; 15 U.S.C. § 78s(d)(2); 15 U.S.C. § 78y(a)(1).

## II.    **Alpine's Disciplinary Proceeding And The Temporary Amendment.**

Alpine is a FINRA member and is the respondent in an ongoing FINRA disciplinary proceeding.[6] Alpine is alleged to have (1) converted and misused customers' assets in violation of

---

[6] *See* Complaint (Dkt. No. 2) ¶¶ 1–2.

FINRA Rules 2150 and 2010; (2) executed unauthorized trades in violation of FINRA Rule 2010; (3) charged unfair, unreasonable, and discriminatory prices, commissions, and fees in violation of FINRA Rules 2121, 2122, and 2010; and (4) made unauthorized capital withdrawals in violation of FINRA Rules 4110(c) and 2010. [*See* DOE Complaint ¶¶ 112–167.]

The disciplinary proceeding began in person on February 18, 2020 and was adjourned after five days of testimony due to a family emergency of Alpine's counsel.[7] While the disciplinary proceeding was adjourned, the COVID-19 pandemic caused FINRA to administratively postpone, until November 30, 2020, the portion of the disciplinary proceeding that was to resume in person.[8]

To permit FINRA to resume its critical adjudicatory function and to fulfill its statutory obligations to protect investors and maintain fair and orderly markets, FINRA filed the Temporary Amendment with the SEC that would allow the OHO's Chief Hearing Officer or Deputy Chief Hearing Officer to order that a disciplinary proceeding be conducted in whole, or in part, by videoconference. [*See* Notice of Proposed Rule Change, Ex. 3 to Alpine's Complaint (Dkt. 2-3).] The Temporary Amendment became operative October 1, 2020. The expiration date of the Temporary Amendment was originally December 31, 2020, and was subsequently extended to April 30, 2021. [*See id.* at 55712;] *see also* SR-FINRA-2020-042 (available at *https://www.finra.org/sites/default/files/2020-12/SR-FINRA-2020-042.pdf* (last visited December 15, 2020)).

---

[7] *See* Complaint (Dkt. No. 2) ¶¶ 48, 53–4.
[8] *See* Complaint (Dkt. No. 2) ¶¶ 55–56, 68, 82, 99. Since the initial adjournment, the disciplinary proceeding was resumed to take testimony from those witnesses whom the hearing officer had granted leave to testify telephonically or by videoconference. *See* Complaint (Dkt. No. 2) ¶ 101.

III.   **The Videoconference Order, This Action, And The Subsequent Postponement Order.**

On November 2, 2020, the Chief Hearing Officer exercised her discretion under Rule 9261 to order that the remainder of Alpine's disciplinary proceeding be conducted via videoconference. [*See* Order Converting Hearing to Videoconference, Ex. 1 to Alpine's Complaint (Dkt. No. 2-1) (the "Videoconference Order").] Eight days later, Alpine filed this action seeking to enjoin the disciplinary proceeding and to invalidate the Temporary Amendment and the Videoconference Order applying it.[9]

On November 16, 2020, the Deputy Chief Hearing Officer entered an order postponing the November 30 hearing date (the "Postponement Order"), and requiring Alpine and FINRA's Department of Enforcement ("DOE") to submit briefing on the issue of whether the Videoconference Order should be reconsidered (the "Reconsideration Briefing"). [*See* Notice of Withdrawal of Plaintiff's Motion for Preliminary Injunction (Dkt. No. 23) ¶ 4.] As a result of the Postponement Order, Alpine withdrew its Motion for Preliminary Injunction. [*See id.* (Dkt. No. 23) ¶ 5.] But Alpine did not dismiss its Complaint, and thus now requests that this Court preemptively resolve an issue that will be presented to OHO's Chief Hearing Officer through the parties' Reconsideration Briefing.

**Argument**

I.   **The Exchange Act's Exclusive Review Process Strips This Court Of Subject-Matter Jurisdiction To Consider Alpine's Claims.**

Here, like in *Scottsdale I* and *Scottsdale II*, FINRA initiated a disciplinary proceeding against a member firm. [*See generally* DOE Complaint;] *see also Scottsdale I*, 844 F.3d at 418;

---

[9] *See* Complaint (Dkt. No. 2) ¶ 9.

*Scottsdale II*, 811 F. App'x. at 667. Here, like in *Scottsdale I* and *Scottsdale II*, plaintiff filed suit against FINRA to alternatively halt or collaterally attack the FINRA disciplinary proceeding.[10] *See Scottsdale I*, 844 F.3d at 419; *Scottsdale II*, 811 F. App'x. at 667. Thus here, like in *Scottsdale I* and *Scottsdale II*, this Court lacks subject-matter jurisdiction to consider plaintiff's claims. *See Scottsdale I*, 844 F.3d at 424; *Scottsdale II*, 811 F. App'x. at 668. As the D.C. Circuit explicitly stated less than six months ago, "[h]aving now failed to evade the statutory review scheme for a second time, it should be clear to [Alpine and its affiliate] Scottsdale that it cannot sue FINRA in federal district court for FINRA's alleged failure to comply with the [Exchange] Act." *Scottsdale II*, 811 F. App'x. at 668.

Article III courts are "courts of limited jurisdiction," possessing "only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction." *Id.* (citation omitted). Congress has the absolute authority to grant or withhold subject-matter jurisdiction of the lower federal courts. *See Palmore v. United States*, 411 U.S. 389, 401 (1973). The withholding of subject-matter jurisdiction need not be express. Rather, as the Supreme Court explained in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Congress shall be deemed to have stripped the subject-matter jurisdiction of the lower federal courts when (1) such intent is "fairly discernible in the statutory scheme" and (2) the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure." *See Thunder Basin*, 510 U.S. at 207, 212 (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 351 (1984)).

Courts around the country—including the Fourth Circuit in *Scottsdale I* and the D.C.

---

[10] *See* Complaint (Dkt. No. 2) ¶ 9.

Circuit in *Scottsdale II*—have repeatedly and consistently held that the comprehensive administrative review process established by the Exchange Act deprives district courts of subject-matter jurisdiction over claims that would interfere with FINRA or SEC disciplinary proceedings. *See, e.g.*, *Scottsdale II*, 811 F. App'x. 667, 667 (D.C. Cir. 2020); *Scottsdale I*, 844 F.3d 414, 424 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236, 1241 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276, 282 (2d Cir. 2016); *Jarkesy v. SEC*, 803 F.3d 9, 12 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765, 767 (7th Cir. 2015); *Swirsky v. NASD*, 124 F.3d 59, 62 (1st Cir. 1997); *SEC v. Waco Financial*, 751 F.2d 831, 834 (6th Cir. 1985); *Merrill Lynch, Pierce, Fenner & Smith v. NASD*, 616 F.2d 1363, 1370 (5th Cir. 1980); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 700 (3rd Cir. 1979); *Charles Schwab & Co. Inc. v. FINRA*, 861 F. Supp. 2d 1063, 1069–70 (N.D. Cal. 2012); *Hayden v. N.Y. Stock Exch., Inc.*, 4 F. Supp. 2d 335, 340 (S.D.N.Y. 1998).

Those decisions were correctly decided and should be followed here. Alpine's reliance on the Second Circuit's decision in *Fiero v. FINRA*, 660 F.3d 569 (2d Cir. 2011), to suggest that this Court has subject-matter jurisdiction over its claims is misplaced. [*See* Response Regarding Motion For A Preliminary Injunction (Dkt. No. 22) at 6.] The plaintiffs in *Fiero*, unlike Alpine here, were not attempting to interfere with an ongoing FINRA disciplinary hearing. *See Fiero*, 660 F.3d at 572 ("The hearing panel expelled Fiero Brothers . . . and fined the Fieros $1,000,000 plus costs, jointly and severally. On appeal, the NAC affirmed the hearing panel's decision in its entirety. The Fieros did not appeal the NAC's decision to the SEC."). Rather, the narrow issue in *Fiero* was whether FINRA—after its member exhausted the Exchange Act's comprehensive administrative review process—had the "authority to bring judicial actions to collect monetary sanctions." *Id.* at 574. Thus, the Second Circuit in *Fiero* never even considered whether Congress

stripped district courts of jurisdiction over claims involving ongoing FINRA disciplinary hearings—the jurisdictional question presented by Alpine's complaint. Nearly five years after *Fiero*, however, in *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016)—a case more analogous to this one than *Fiero*—the Second Circuit applied the *Thunder Basin* test and held that federal district courts lack subject-matter jurisdiction to consider claims regarding ongoing SEC enforcement actions. *See Tilton*, 824 F.3d at 282; *see also Chau v. SEC*, 665 F. App'x 67, 72 (2d Cir. 2016) (Complaint dismissed pursuant to *Thunder Basin* for lack of subject-matter jurisdiction.).

Application in this case of the Supreme Court's two-part *Thunder Basin* test plainly demonstrates that Congress intended to strip this Court of subject-matter jurisdiction over Alpine's claims.

### A. It Is "Fairly Discernable In The Statutory Scheme" That Congress Allocated Initial Review To FINRA.

The first step of the *Thunder Basin* test is met here because it is "fairly discernable" that Congress intended the Exchange Act to channel challenges to FINRA's disciplinary actions through the Act's comprehensive administrative scheme. *See Thunder Basin*, 510 U.S. at 207. "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose . . . ." *Id*. "Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Free Enterprise Fund v. Public Co. Acctg. Oversight Bd.*, 561 U.S. 477, 489 (2010). With the Exchange Act Congress did just that, providing for two levels of FINRA review and one level of SEC review of any contested disciplinary action. *See* FINRA Rules 9211, 9311, 9370.

Furthermore, as the D.C. Circuit observed in *Jarkesy*, "the securities laws' scheme of [regulatory] adjudication and ensuring judicial review resembles in material respects the

enforcement scheme the Supreme Court found exclusive in *Thunder Basin*." *Jarkesy*, 803 F.3d at 16. Specifically, under the statutory scheme deemed to be exclusive in *Thunder Basin*, a party challenging regulatory action receives (1) a hearing before an administrative law judge, (2) discretionary review by the regulator, and (3) judicial review by a United States Court of Appeals. *See Thunder Basin*, 510 U.S. at 207–08. Likewise, under the Exchange Act a party to any FINRA disciplinary proceeding receives (1) a hearing before a FINRA hearing panel, (2) an appeal of the hearing panel's decision to FINRA's NAC, (3) a subsequent *de novo* appeal to the SEC, and (4) another appeal to the United States Court of Appeals. *See* FINRA Rules 9211(a), 9311, 9370; 15 U.S.C. § 78s(d)(2); 15 U.S.C. § 78y(a)(1).

To the extent the Exchange Act and the statutory scheme at issue in *Thunder Basin* differ, the Exchange Act is more robust and evidences an even clearer intent by Congress to direct review of enforcement proceedings exclusively through the statutory framework of administrative and judicial review. Whereas regulatory appeals are permissive under the statutory framework at issue in *Thunder Basin*, the Exchange Act provides any party that receives an adverse ruling from a FINRA hearing panel two administrative appeals as a matter of right: first to the NAC and then to the SEC. *Compare* FINRA Rules 9311, 9370 *to Thunder Basin*, 510 U.S. at 207–08.

Congress crafted the Exchange Act's administrative review scheme in "painstaking detail," and for that reason every court to consider the issue has concluded that the Exchange Act meets the first step of the *Thunder Basin* test, except for one district court decision that was reversed on appeal.[11] *See Scottsdale II*, 811 F. App'x. at 668 ("Given the painstaking detail with which Congress set forth the rules governing the court of appeals' review of FINRA and SEC action, it

---

[11] *Hill v. SEC*, 114 F. Supp. 3d 1297 (2015), *rev'd by Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016).

is fairly discernible that Congress intended to deny aggrieved FINRA members an additional avenue of review in district court." (citing *Jarkesy*, 803 F.3d at 17)); *Hayden*, 4 F. Supp. 2d at 339 ("Congress's failure to assign any role to the district courts strongly suggests that Congress intended the statutory review procedure to be exclusive. Indeed, any other conclusion would subvert the Congressional purpose of creating a partnership between government and private enterprise as the cornerstone for regulation of the nation's securities markets.").

### B. <u>Congress Intended To Preclude Initial Judicial Review Of Alpine's Claims</u>.

The second step of the *Thunder Basin* test is also met here because Alpine's claims are "of the type Congress intended to be reviewed within [the Exchange Act's] statutory structure." *See Thunder Basin*, 510 U.S. at 212. "To unsettle the presumption of initial administrative review— made apparent by the structure of the [Exchange Act]—requires a strong countervailing rationale." *Jarkesy*, 803 F.3d at 17 (quotation omitted). That "strong countervailing rationale," may be present "if a finding of preclusion could foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise." *Free Enterprise*, 561 US at 489 (citing *Thunder Basin*, 510 U.S. at 212–13). None of those countervailing rationales to exclusive administrative review exist here.

First, the Exchange Act provides for meaningful judicial review. Alpine can make its case regarding the propriety of the Videoconference Order to (1) the FINRA hearing panel, (2) the NAC, (3) the SEC, and (4) one of multiple United States Court of Appeals. *See* FINRA Rules 9211(a), 9311, 9370; 15 U.S.C. § 78s(d)(2); 15 U.S.C. § 78y(a)(1); *see also Jarkesy*, 803 F.3d at 20 (The Exchange Act "presents an entirely 'meaningful' avenue of relief to [disciplinary proceeding] respondents."). Alpine can also challenge the Temporary Amendment by petitioning

the SEC to amend or repeal the rule. *See* 17 C.F.R. § 201.192. As explained by the Fourth Circuit in *Scottsdale I*, "[t]he SEC's decision on FINRA's rule would be final agency action of which [Alpine] could then seek review in the appropriate court of appeals." *Scottsdale I*, 844 F.3d at 423; *see also* 15 U.S.C. § 78y.

Second, there can be no reasonable assertion that Alpine's claims are "wholly collateral" to the Exchange Act's statutory scheme because Alpine's claims seek to enjoin an ongoing disciplinary proceeding that is part of that statutory scheme.[12] *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 22 (2012) (A claim cannot be wholly collateral to a statutory scheme where plaintiff's challenge was "at bottom an attempt to reverse an agency's decision . . . ." (citation omitted)). Indeed, as the district court in *Scottsdale II* explained, "[c]laims that arise from actions FINRA took within the administrative enforcement scheme or that seek the same relief that plaintiff could obtain in the agency proceeding are not collateral at all, let alone 'wholly' so." *Scottsdale Capital Advisors Corp. v. FINRA*, 390 F. Supp. 3d 72, 80 (D.D.C. 2019) (quoting *Jarkesy*, 803 F.3d at 23), *aff'd*, *Scottsdale II*; *see also Tilton*, 824 F.3d at 287 ("[A] claim is not wholly collateral if it has been raised in response to, and so is procedurally intertwined with, an administrative proceeding— regardless of the claim's substantive connection to the initial merits dispute in the proceeding." (citation omitted)).

Contrary to Alpine's argument, the mere fact that the relief Alpine seeks—a judicial declaration invalidating the Temporary Amendment—may have effects beyond Alpine's specific disciplinary hearing does not render its claim "wholly collateral" to the Exchange Act's statutory scheme. [*See* Response Regarding Motion For A Preliminary Injunction (Dkt. No. 22) at 8.] The

---

[12] *See* Complaint (Dkt. No. 2) ¶ 9.

claims asserted in *Scottsdale I* and *Scottsdale II* had potentially wide-ranging implications. *See Scottsdale I*, 844 F.3d at 418–419 (Scottsdale claimed that FINRA could only discipline its members for violation of the Exchange Act, and not for violation of the Securities Act.); *Scottsdale II*, 811 F. App'x. at 667 (Scottsdale claimed that the composition of FINRA's board violated the Exchange Act.). Yet, the Fourth Circuit and the D.C. Circuit in those cases each dismissed the claims for lack of subject-matter jurisdiction and concluded that the claims were not "wholly collateral" to the Exchange Act's review provisions. *See Scottsdale I*, 844 F.3d at 423 ("As Scottsdale's claim arises out of the proceeding against it and provides an affirmative defense, it is not wholly collateral to the statute."); *Scottsdale II*, 811 F. App'x. at 668 ("The FINRA actions that Scottsdale challenges are neither wholly collateral to the statutory review scheme nor outside FINRA and the SEC's expertise.").

Third, consideration of whether the Videoconference Order provides Alpine a "fair procedure" in the disciplinary hearing as required by the Exchange Act falls squarely within agency expertise, as the courts in *Scottsdale I* and *Scottsdale II* held. *See Scottsdale I*, 844 F.3d at 424 ("Congress vested authority in the SEC to review a final disciplinary sanction imposed by FINRA and determine whether its rules were applied in a manner consistent with the purposes of the Exchange Act. Thus, Congress unambiguously channeled [plaintiff's] claim—whether FINRA has exceeded its authority . . .—to the SEC for determination in the first instance." (quotation omitted)); *Scottsdale Capital Advisors Corp. v. FINRA*, 390 F. Supp. 3d 72, 82 (D.D.C. 2019) ("[T]he propriety of FINRA's rules and actions . . . are firmly within the SEC's expertise."), *aff'd*, *Scottsdale II*; *Scottsdale II*, 811 F. App'x. at 668. It is of no consequence that Alpine contends FINRA violated Alpine's constitutional due process rights, as well as its statutory right to a "fair

procedure" in the disciplinary hearing. *See* 15 U.S.C. § 78o-3(b)(8). The Supreme Court in *Thunder Basin* and again in *Elgin* expressly held that district courts lack subject-matter jurisdiction to consider challenges to disciplinary proceedings notwithstanding that such challenges are artfully pled as constitutional claims. *See Thunder Basin*, 510 U.S. at 212–214; *see also Elgin*, 567 U.S. at 22–23.

The propriety of the Temporary Amendment is also squarely within agency expertise. That is made plain by the fact that Congress granted the SEC the statutory right to review the Temporary Amendment to confirm that FINRA's changes to Rule 9261 were consistent with the Exchange Act. *See* 15 U.S.C. § 78s(b)(3)(C); *see also Tilton*, 824 F.3d at 290 (Agency expertise includes "resolving accompanying statutory claims that it routinely considers . . . ." (quotation omitted)).

The relief Alpine seeks here is to have the district court substitute the Chief Hearing Officer's interpretation of her powers and obligations under the Exchange Act and Rule 9261 with its own.[13] As such, Alpine's claims, like its affiliate's claim in *Scottsdale II*, are "an impermissible attempt to short-circuit the detailed statutory scheme of administrative and judicial review of FINRA action. Accepting [Alpine's] argument would render that scheme largely superfluous and make nearly any disputed FINRA action subject to challenge in district court." *Scottsdale II*, 811 F. App'x at 668. Accordingly, the Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

---

[13] *See* Complaint (Dkt. No. 2) ¶ 9.

## II.     The Lack Of A Private Right Of Action And FINRA's Immunity Require Dismissal Of All Alpine's Claims.

All Alpine's claims can also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) there is no private right of action against FINRA for violation of its rules or the Exchange Act, and (2) FINRA is immune from claims arising out of the performance of its regulatory functions.

### A.     Alpine Lacks A Private Right Of Action Against FINRA For Violation Of FINRA Rules Or The Exchange Act.

Congress did not provide in the Exchange Act, or in any other statute, for a private right of action against an SRO for violation of its own rules. Given the comprehensiveness of the Exchange Act, and Congress's silence regarding any private right of action, courts have consistently held that there is no implied private right of action against an SRO for acts or omissions under the Exchange Act. *See, e.g.*, *Turbeville*, 874 F.3d at 1276 ("Congress did not intend to create a private right of action for plaintiffs seeking to sue [FINRA] for violations of [its] own internal rules."); *Sparta*, 159 F.3d at 1212 (9th Cir. 1998) ("It is undisputed, even by [the plaintiff], that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act."); *Desiderio*, 191 F.3d at 208 ("[T]here is no private right of action available under the Securities Exchange Act to . . . challenge an exchange's failure to follow its own rules." (citation omitted)); *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) ("Any attempt by [plaintiff] to bypass the Exchange Act by asserting a private breach of contract claim . . . is fruitless."); *In re Series 7*, 548 F. 3d at 114 ("[C]ourts have consistently found Congress's intent under the Exchange Act precludes common law causes of action, and we agree with the reasoning of our sister circuits.").

The absence of a private right of action defeats Alpine's claims because they are predicated entirely on the assertion that the Videoconference Order violates Rule 9261 and the Exchange Act's requirement that disciplinary proceedings provide a "fair procedure." *See* 15 U.S.C. § 78o-3(b)(8). To the extent that Alpine desires to challenge the promulgation or application of Rule 9261, it must do so within the framework of the comprehensive statutory scheme established in the Exchange Act. Alpine cannot end-run Congress's statutory scheme by filing suit and asking this Court to declare what Rule 9261 means and whether its application by the Chief Hearing Officer in the Videoconference Order is consistent with the Exchange Act.

**B.      FINRA Is Immune From Claims Arising From The Performance Of Its Regulatory Functions.**

FINRA is absolutely immune from suit for any claims regarding regulatory functions performed "under the aegis of the Exchange Act's delegated authority." *Sparta*, 159 F.3d at 1214–15. That has been the conclusion of every Circuit to consider the question. *See, e.g.*, *Sparta*, 159 F.3d at 1214–15; *In re NYSE Specialists*, 503 F.3d 89, 96 (2d Cir. 2007) (Sotomayor, J.) (An SRO "is entitled to absolute immunity for actions it takes pursuant to its quasi-governmental role in the regulation of the securities market."); *In re Series 7*, 548 F.3d at 114 (An SRO is "absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties.").

Contrary to Alpine's assertion, FINRA does not claim sovereign immunity that is afforded only to governmental actors. [*See* Response Regarding Motion For A Preliminary Injunction (Dkt. No. 22) at 3.] Rather, FINRA's regulatory immunity derives from "the structure of the securities market as constructed by Congress." *Sparta*, 159 F.3d at 1213. For cooperative regulation to be effective, SROs need to be free from "disruptive and recriminatory lawsuits" when they act in their

regulatory capacity. *See id.* at 1215; *see also DL Capital Grp., LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 99 (2d Cir. 2005) (quotation omitted). Indeed, as then-Judge Sotomayor explained in *In re NYSE Specialists*, "the purpose of [regulatory] immunity is to give . . . SROs breathing room to exercise their powers without fear that their discretionary decisions may engender endless litigation," and to ensure that they "will not be excessively timid in their regulatory decisions . . . ." *In re NYSE Specialists*, 503 F.3d at 97. Thus, unlike a governmental actor claiming sovereign immunity—which absent consent to be sued is immunized for virtually any action it takes—FINRA is immune from claims regarding the performance of its regulatory functions.

Applying this functional test, all Alpine's claims fail because they arise exclusively from FINRA's exercise of its statutory obligation to "enforce compliance by its members" by conducting disciplinary proceedings addressing violations of FINRA's rules or the Exchange Act. 15 U.S.C. § 78o-3(b)(2), (b)(7), (h). That Alpine seeks only injunctive relief does not change the fact that this is an action brought against FINRA in its regulatory capacity, and as such, is barred. *See, e.g., American Benefits Group, Inc. v. NASD,* 1999 U.S. Dist. LEXIS 12321, *24 (S.D.N.Y. Aug. 10, 1999) (denying injunctive relief against NASD on immunity grounds); *Lucido v. Mueller*, No. 08-15269, 2009 U.S. Dist. LEXIS 89775, *19 (E.D. Mich. Sep. 29, 2009) (denying injunctive relief on the grounds of FINRA's regulatory immunity), *aff'd*, 427 F. App'x 497 (6th Cir. 2011). Indeed, claims seeking declaratory relief are no less "disruptive and recriminatory" than those seeking monetary damages. *See DL Capital*, 409 F.3d at 99 (quotation omitted).

**III.**     **Alpine's Claims Each Fail For Additional Independent Substantive Reasons**.

In addition to the lack of a private right of action and FINRA's immunity, each of Alpine's four claims can be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on independent substantive grounds.

**A.**     **Alpine's Due Process Claim (Count II) Fails Because FINRA Is Not A State Actor.**

Alpine's constitutional due process claim (Count II) fails for the additional reason that FINRA is not a state actor. *See Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002) (To state a constitutional claim against a private actor "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State." (quotation omitted)). That FINRA is not a state actor has been the conclusion of every Circuit to have squarely ruled on the issue. *See Desiderio*, 191 F.3d at 206 ("The NASD [FINRA's predecessor] is a private actor, not a state actor."); *D.L. Cromwell Invs., Inc. v. NASD*, 279 F.3d 155, 162 (2d Cir. 2002) (same); *Santos-Buch v. FINRA*, 591 F. App'x 32, 33 (2d Cir. 2015) ("As a private actor whose conduct in this case is not 'fairly attributable' to the government, FINRA could not have violated [plaintiff's] due process rights or the Ex Post Facto Clause."); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("[Appellant] cannot bring a constitutional due process claim against [FINRA], because [FINRA] is a private actor, not a state actor."); *First Jersey*, 605 F.2d at 699 n.5 (same). The Fourth and Seventh Circuits have also strongly suggested that FINRA and other SROs are not state actors. *See Jones v. SEC*, 115 F.3d 1173, 1183 (4th Cir. 1997); *Gold v. SEC*, 48 F.3d 987, 991 (7th Cir. 1995).

Alpine's argument that the Tenth Circuit in *Rooms v. SEC*, 444 F.3d 1208 (10th Cir. 2006), split from its sister Circuits and held that FINRA was a state actor is wrong. [*See* Response

Regarding Motion For A Preliminary Injunction (Dkt. No. 22) at 10.] The issue in that non-precedential decision was whether "*the SEC* violated [Rooms's] due process rights by upholding the bar without finding a violation of Rule 8210." *Rooms*, 444 F.3d at 1210 (emphasis added). The passing statement in *Rooms* that "[d]ue process requires that an NASD rule give fair warning of prohibited conduct" was at most dicta, as the First Circuit concluded in *Cody v. SEC*, 693 F.3d 251 (1st Cir. 2012). *Id.* at 257, n.2. (*Rooms* "has dicta referring to due process as governing NASD rules."). A more recent Tenth Circuit opinion confirms that *Rooms* did not decide the state-actor issue. In *McCune v. SEC*, 672 F. App'x 865, 869–70 (10th Cir. 2016), the Tenth Circuit declined to "resolve whether constitutional mandates apply" to FINRA because it could resolve the case without deciding that issue. *Id.* If the Tenth Circuit had previously decided in *Rooms* that FINRA is a state actor, then in *McCune* it would have said so when acknowledging the appellant's reliance on *Rooms*. It did not. *Id.*

Alpine's allegation that FINRA is a state actor because it purportedly "acts as an agent of the Federal Government" is conclusory and need not be accepted as true.[14] *See Iqbal*, 556 U.S. at 678. Alpine's agency argument has also been rejected by the courts to have considered it. In *Gold*, the Seventh Circuit explained that Alpine's argument had "the agency analogy is upside down. The [SRO] is the principal rather than the agent; the purpose of the federal law is to strengthen the power and responsibility of the [SRO] in performing a policing function that preexisted federal regulation." *Gold*, 48 F.3d at 991. Additionally, in *Desiderio*, the Second Circuit correctly explained that FINRA "is a private actor, not a state actor. It is a private corporation that receives no federal or state funding. Its creation was not mandated by statute, nor does the

---

[14] *See* Complaint (Dkt. No. 2) ¶ 153.

government appoint its members or serve on any [FINRA] board or committee." *Desiderio*, 191 F.3d at 206; *Santos-Buch v. FINRA*, 32 F. Supp. 3d 475, 484 (S.D.N.Y. 2014), *aff'd*, 51 F. App'x 32 (2d Cir. 2015) (same).

Alpine's allegation that the SEC exercises "pervasive review authority" over FINRA is also insufficient to convert FINRA into a state actor.[15] As the Supreme Court held in *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974), "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed . . . do so." *Jackson*, 419 U.S. at 350; *see also Graman v. NASD*, 1998 U.S. Dist. LEXIS 11624, *8 (D.D.C. Apr. 27, 1998) (same); *People v. Cohen*, 187 Misc. 2d 117, 122 (Sup. Ct. 2000), *aff'd*, 9 A.D.3d 71, 85–86 (NY. Ct. App. 2004) ("While Congress certainly provided for comprehensive Federal regulation of the securities industry, and charged the SROs with the duty of self-regulation, the fact that the NASD is subject to extensive oversight by the SEC, and ultimately Federal court review, does not metamorphose the NASD into an organ of the Federal Government.").

To adequately plead state action, Alpine was required to allege facts showing "that there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001) (quotation omitted); *see also Desiderio*, 191 F.3d at 207 (State action "requires a nexus between the state and the *specific* conduct of which plaintiff complains."). Alpine has not pled any such facts here. Indeed, there is not a single allegation in the Complaint purporting to show how the SEC or some other governmental actor was involved with the

---

[15] *See* Complaint (Dkt. No. 2) ¶ 156.

promulgation of the Temporary Amendment or the issuance of the contested Videoconference Order. Alpine has only observed the FINRA is regulated by the SEC, which—as every Court to consider the issue has held—is not enough to plead state action. *See e.g.*, *Desiderio*, 191 F.3d at 206; *D.L. Cromwell*, 279 F.3d at 162; *Santos-Buch*, 591 F. App'x at 33; *Epstein*, 416 F. App'x at 148; *First Jersey*, 605 F.2d at 699 n.5; *Graman*, 1998 U.S. Dist. LEXIS at *8 (D.D.C. Apr. 27, 1998); *Cohen*, 187 Misc. 2d at 122, *aff'd*, 9 A.D.3d 71, 85–86 (NY. Ct. App. 2004).

    **B.**    **Alpine's Declaratory Relief Claims (Counts I and IV) Are Meritless And Should Not Be Considered.**

        **1.**    **The Videoconference Order Complied With Rule 9261.**

Alpine's claim seeking a declaratory judgment that the Videoconference Order breached Rule 9261 (Count I) fails for the additional reason that the Chief Hearing Officer's alleged misconduct did not violate the express terms of Rule 9261. Alpine alleges that the Chief Hearing Officer breached Rule 9261 by *sua sponte* entering the Videoconference Order.[16] Rule 9261, however, does not limit the Chief Hearing Officer's authority to enter the Videoconference Order to circumstances where the parties have first submitted motions or presented argument. *See* Rule 9261(b).

Alpine also alleges that the Chief Hearing Officer breached Rule 9261 by requiring Alpine to present some of its witnesses remotely despite that DOE presented many of its witnesses live.[17] The express terms of Rule 9261, however, authorize the Chief Hearing Officer to order that only part of a disciplinary proceeding be conducted remotely. *See* Rule 9261(b) ("[T]he Chief Hearing

---

[16] *See* Complaint (Dkt. No. 2) ¶¶ 143–144.
[17] *See* Complaint (Dkt. No. 2) ¶ 146.

Officer . . . may, on a temporary basis, determine that the hearing shall be conducted, in whole *or in part*, by video conference." (emphasis added)).

2. <strong><u>Alpine's Allegations Regarding Promulgation Of The Temporary Amendment Are Wholly Conclusory.</u></strong>

The Temporary Amendment was promulgated pursuant to 15 U.S.C. § 78s(b)(3)(A)(iii) and 17 C.F.R. § 240.19b-4(f)(6), which permit rule changes concerning the administration of an SRO so long as such a change "[d]oes not significantly affect the protection of investors or the public," and "[d]oes not impose any significant burden on competition." [*See* Notice of Proposed Rule Change, Ex. 3 to Alpine's Complaint (Dkt. 2-3), at 55712;] *see also* 17 C.F.R. § 240.19b-4(f)(6). In addition to the reasons previously stated, Alpine's claim seeking a declaratory judgment that the Temporary Amendment was invalidly promulgated (Count IV) also fails because Alpine does not allege any facts to support its claim, and instead relies entirely on conclusory assertions that need not be accepted as true. *See Iqbal*, 556 U.S. at 678.

Alpine erroneously alleges that the Temporary Amendment is not administrative in nature because it purportedly impairs the ability of FINRA members to defend themselves in disciplinary proceedings.[18] The Temporary Amendment, however, does not limit the testimony and evidence a FINRA member is permitted to introduce in its defense. *See* Rule 9261. And contrary to Alpine's assertion (at ¶ 193), a party is not denied "the right to present an effective defense" by being ordered to present witnesses remotely. *See, e.g.*, *Legaspy v. FINRA*, 2020 U.S. Dist. LEXIS 145735, **11–12 (N.D. Ill. Aug. 12, 2020) ("Remote hearings . . . in no way prevent parties from

---

[18] *See* Complaint (Dkt. No. 2) ¶ 190.

presenting claims or defenses."). Indeed, the Federal Rules of Civil Procedure expressly allow remote trial testimony. *See* Fed. R. Civ. P. 43(a).

Alpine declares that the Temporary Amendment "does significantly affect the protection of investors and the public interest," but does not allege any facts to support that conclusory assertion.[19] Nor could it. Investors and the public are not injured by a rule that allows FINRA to fulfill its statutory mandate to discipline its members and promote just and equitable principles of trade, while at the same time providing FINRA members the same procedural rights regarding presentation of testimony available to litigants in federal courts. *See* 15 U.S.C. § 78o-3(b)(2), (6)–(7); *see also* Fed. R. Civ. P. 43(a); *see also Vitamins Online, Inc. v. Heartwise, Inc.*, 2020 U.S. Dist. LEXIS 111709, **27–28 (D. Utah June 24, 2020) (Ordering remote trial testimony over a party's objection.); *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 2020 U.S. Dist. LEXIS 118236, at *3 (E.D. Mich. June 30, 2020) (Ordering remote trial testimony over the objection of both parties.).

Likewise, Alpine has not alleged any facts showing that the Temporary Amendment "impose[s] any significant burden on competition." Rule 9261 applies with equal force to all FINRA members and it does not in any way alter the relationship between FINRA members and investors. *See* Rule 9261. Alpine hypothesizes that competition may be harmed if a FINRA member is expelled at the conclusion of a disciplinary hearing.[20] But the risk of expulsion at the conclusion of a disciplinary hearing exists whether testimony is taken live or remotely, and thus is not attributable to the Temporary Amendment.

---

[19] *See* Complaint (Dkt. No. 2) ¶ 192.
[20] *See* Complaint (Dkt. No. 2) ¶ 197.

3.      **The Court Should Exercise Its Discretion To Not Consider The Declaratory Judgment Claims.**

The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). This language on its face is clear: the Declaratory Judgment Act does not affirmatively convey jurisdiction to district courts, and cannot be invoked where, as is the case here, the district court otherwise lacks subject-matter jurisdiction over a party's claims. *See, e.g.*, *Santos-Buch, supra,* 32 F. Supp. 3d 475 (dismissing for lack of subject-matter jurisdiction a declaratory relief claim arising out of a FINRA disciplinary proceeding). Moreover, the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 2143 (1995) (quotation omitted). Thus, even in cases where a district court has the jurisdiction to consider a party's declaratory judgment claim, it is not required to do so. *See id.*

Here, even if Alpine's declaratory judgment claims did not fail for a number of other reasons, this Court should decline to consider them. Alpine has the opportunity to brief its arguments and to ask the Chief Hearing Officer to reconsider her Videoconference Order and allow Alpine to present its witnesses live. [*See* Notice of Withdrawal of Plaintiff's Motion for Preliminary Injunction (Dkt. No. 23) ¶ 4.] Those arguments have not yet been briefed or ruled upon, and Alpine can only now speculate whether it will be required to present witnesses remotely. The Supreme Court has held that courts should decline to consider such declaratory judgment claims that involve only speculative harm. *See Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 244

(1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").

### C.      Alpine Admits It Is Not Entitled To Injunctive Relief (Count III).

Alpine's injunctive relief claim (Count III) additionally fails because an injunction is a remedy, not a claim. *See Bank of the W. v. Sabey*, 2012 U.S. Dist. LEXIS 134158, at *28 (D. Utah Sep. 19, 2012) ("[I]njunctive relief 'claims' are actually remedies; they are not independent causes of action." (citing *Anderson v. Granite School District,* 17 Utah 2d 405, 413 (Utah 1966)).

Moreover, injunctive relief requires, among other things, that Alpine show that it "will suffer irreparable injury unless the injunction issues . . . ." *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006) (quotation omitted). Alpine cannot do so, as it admitted when it withdrew its Motion for Preliminary Injunction. [*See* Notice of Withdrawal of Plaintiff's Motion for Preliminary Injunction (Dkt. No. 23) ¶ 5 ("Alpine no longer faces the imminent harm . . . that triggered the filing of the emergency Motion for Preliminary Injunction.").]

### Conclusion

For the foregoing reasons, Alpine's Complaint (Dkt. No. 2) should be dismissed with prejudice.

DATED this 16th day of December, 2020.

*/s/ Clint R. Hansen*
Clint R. Hansen
Kevin N. Anderson
FABIAN VANCOTT
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of December, 2020, I caused a true and correct copy

of the foregoing to be filed via the Court's electronic filing system, which made service by email

upon the following counsel of record:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
**PARSONS BEHLE & LATIMER**
bbaker@parsonsbehle.com
alebenta@parsonsbehle.com
jbletzacker@parsonsbehle.com
ecf@parsonsbehle.com

Maranda E. Fritz
**MARANDA E. FRITZ, P.C.**
maranda@fritzpc.com

*/s/ Clint R. Hansen*