Brent R. Baker (10411)
Aaron D. Lebenta (10180)
Jonathan D. Bletzacker (12034)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
bbaker@parsonsbehle.com
alebenta@parsonsbehle.com
jbletzacker@parsonsbehle.com
ecf@parsonsbehle.com

Maranda E. Fritz (*Pro Hac Vice*)
**MARANDA E. FRITZ, P.C.**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: 646.584.8231
Facsimile: 212.344.6101
Email: maranda@fritzpc.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ALPINE SECURITIES CORPORATION, a Utah corporation, | **PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiff, | |
| v. | Case No. 2:20-cv-00794-DBB |
| | Judge David B. Barlow |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, | |
| Defendant. | **(Immediate Oral Argument Requested)** |

**TABLE OF CONTENTS**

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... iii

Renewed Motion for Preliminary Injunction ...................................................... 1

Memorandum of Points and Authorities in Support ........................................... 3

I.  Statement of Facts ...................................................................................... 3

    A.  The Disciplinary Proceeding against Alpine ...................................... 3

    B.  Alpine Invokes its Right to an In-Person Hearing ............................. 5

    C.  The Parties Litigate the Issue of Remote Testimony ......................... 6

    D.  Enforcement Presents Most of Its Case In Person ............................. 6

    E.  The Hearing Officer's Continued Consideration of whether to Proceeding Remotely ....... 7

    F.  The Parties Proceed with Limited Remote Testimony for Some Witnesses ..................... 8

    G.  FINRA *Sua Sponte* Orders the Hearing to Proceed Remotely Based on a New Purportedly Non-Controversial and Immediately Effective Amendment to Rule 9261 ....................... 9

    H.  Alpine Commences this Action ........................................................ 10

    I.  FINRA Again Order that the Hearing is to Proceed Remotely ......................................... 11

II.  Argument ................................................................................................... 3

    A.  Alpine Has a Likelihood of Success on the Merits and Raises a Substantial Question on the Merits ........................................................................... 12

        1.  FINRA Improperly Adopted The Zoom Amendment without a Required Notice and Comment Period ..................................................................... 14

        2.  FINRA May Note Deprive a Member of the Right to An In-Person Hearing Guaranteed by its By-Laws and FINRA Rules ........................................... 18

        3.  Forcing Alpine to Proceed Remotely Under the Circumstances of This Case Constitutes a Violation of Due Process of Law ....................................... 20

i

      4.   Application of the Zoom Amendment to Alpine is Impermissible ............................21

   B.  Plaintiff is Suffering and Will Continue to Suffer Irreparable Harm Absent the Requested Injunctive Relief ...............................................................................22

   C.  The Balance of Equities Tips in Favor of Plaintiff's Request for Preliminary Injunctive Relief ..................................................................................................24

   D.  Issuance of Injunctive Relief is in the Public Interest ........................................24

III. Conclusion ..............................................................................................................25

## TABLE OF AUTHORITIES

### Cases

*Awad v. Ziriax*
> 670 F.3d 1111 (10th Cir.2012) ........................................................22

*Bowen v. Georgetown Univ. Hosp.*
> 488 U.S. 204, 208, 215 (1988) ...................................................17, 21

*City of Chanute v. Kansas Gas & Elec. Co.*
> 754 F.2d 310, 312 (10th Cir. 1985) .................................................25

*Cmty. Television of Utah, LLC v. Aereo, Inc.*
> 997 F.Supp.2d 1191 (D. Utah 2014) ...............................................12

*Cody v. SEC*
> 693 F3d 251 (1st Cir. 2012) ...........................................................20

*Davis v. Minetta*
> 302 F.3d 1104 (10th Cir. 2002) ......................................................24

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*
> 356 F.3d 1256, 1260 (10th Cir. 2004) .............................................22

*Fiero v. FINRA,* 660 F.3d 569
> 660 F.3d 569 (2d Cir. 2011) .....................................................15, 16

*In re Series 7 Broker Qualification Scoring Lit.*
> 510 F.Supp.2d 35, 42-44 (S.D.N.Y. 2007) ......................................20

*Kresock v. Bankers Tr. Co.*
> 21 F.3d 176 (7th Cir. 1994) ......................................................17, 21

*MonaVie, LLC v. Wha Lit Loh*
> 2011 WL 1233274 (D. Utah, March 31, 2011) .................................22

*National Ass'n of Securities Dealers v. S.E.C.*
> 431 F.3d 803 (D.C. Cir. 2005) ........................................................20

*NetCoalition v. S.E.C.*
> 715 F.3d 342 (D.C. Cir. 2013) ........................................................23

*Planned Parenthood Ass'n of Utah v. Herbert*
    828 F.3d 1245, 1252 (10th Cir. 2016) ........................................................12
*Rooms v. SEC*
    444 F.3d 1208 (10th Cir. 2006) ...............................................................20
*Tuberville v. FINRA*
    874 F.3d 1268, 1275 (11th Cir. 2017) .......................................................20
*Utah Rep. Party v. Herbert*
    133 F. Supp. 3d 1337 (D. Utah 2015) .......................................................12

## Statutes and Regulations

15 U.S.C. § 78o-3 ..............................................................................*passim*
15 U.S.C. § 78s ................................................................................*passim*
85 Fed. Reg. at 55,712, 55, 717 ................................................................15
C.F.R. § 240.19b-4 ...............................................................................10
Maloney Act, Pub. L. No. 75-719, 52 Stat. 1070 (1938) .......................................18

## Rules

Fed. R. Civ. P. 65 ...............................................................................12
FINRA Rule 2010 ...................................................................................3
FINRA Rule 9261 ............................................................................*passim*

### PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Alpine Securities Corporation ("Alpine") moves this Court for a preliminary injunction against Defendant Financial Industry Regulatory Association ("FINRA" or "Defendant"), enjoining FINRA from conducting the remainder of Alpine's pending disciplinary hearing by remote means and requiring that FINRA abide by its own rule that a disciplinary hearing be conducted in-person. Alpine previously filed a Motion for a Preliminary Injunction when FINRA, in November 2020, ordered Alpine to resume and complete the disciplinary hearing remotely. In response to Alpine's Motion, FINRA abruptly changed its mind, adjourning the hearing without date. This Court then vacated the scheduled hearing and Alpine withdrew its Motion.

On August 9, 2021, FINRA's Chief Hearing Officer once again ordered Alpine to conduct the remainder of the hearing remotely. That August 9, 2021 decision necessitated the refiling of this Motion.

FINRA should be enjoined from forcing Alpine to complete its disciplinary hearing remotely because FINRA's own rules explicitly provide that, in this kind of proceeding, the Respondent has the right to an "in-person" hearing.  Alpine invoked its right to defend itself and proceeded to an in-person hearing that began February 18, 2020 (the "Hearing") in Salt Lake City, Utah.  To now change that rule, midstream in the proceeding, FINRA is relying upon a purportedly "immediately effective" amendment to the rule that is patently improper, having been adopted without the required notice and comment period. Moreover, the newly passed amendment to the rule cannot, consistent with principles of due process and a fair procedure, be applied *retroactively* against Alpine to a proceeding already in progress, particularly after FINRA's Division of Enforcement ("DOE") was allowed to present most of its case in person.[1]

---

[1] FINRA's only remaining witnesses are staff members who will present additional analysis concerning Alpine's transactions.  While FINRA has also identified Alpine's management as its

Alpine is faced with FINRA's request for the harshest of sanctions – expulsion – and the resulting destruction of its business and livelihood. Absent relief from this Court, Alpine will be forced to try to defend itself under conditions that provide a further advantage to FINRA[2] and will deprive Alpine of the ability to confront and to present witnesses in person. It will be patently unfair to Alpine, since FINRA's DOE was able to present its most of its case in person prior to the onset of the pandemic; it is Alpine's *defense* that will be impacted by the deficiencies of remote presentation. Further, FINRA's drastic approach of forcing this proceeding to go forward at this time, and in this manner, is completely unnecessary. Alpine requests that FINRA is enjoined for forcing Alpine into a remote hearing and that the hearing should be postponed until it can be reasonably held in person.

Alpine is entitled to a stay of the remote proceedings pending full consideration of this application, because forcing Alpine to try to defend this matter remotely, after DOE had the full benefit of the in-person presentation of its key witnesses, would violate FINRA's agreement with Alpine that it is "entitled to be heard in person;" it would violate the statutory requirement that Alpine be provided a "fair procedure" in which to defend itself; and it would constitute an unlawful deprivation of livelihood and property without due process of law.

The equities also plainly weigh in favor of issuing a stay of this proceeding, allowing Alpine to obtain a review of the precipitous and unprecedented action taken by FINRA and ensuring that Alpine, notwithstanding the pandemic, receives a full and fair hearing.  Issues relating to COVID-19 have left the parties with two options, both of which are arguably bad: either proceed in a manner contrary to Alpine's

---

witnesses, it has done so more as a tactical maneuver.  Unquestionably, those Alpine witnesses comprise the bulk of Respondent's defense.

[2] As this Court knows, FINRA already has the advantage of having its own judiciary, much like the SEC did prior to the Supreme Court's decisions regarding the invalidity of that process.

rights under FINRA's long-standing rules, or continue to postpone until the in-hearing proceeding can resume. Neither option is good, but only one results in obvious prejudice to one of the parties: the decision to now press ahead. No harm would flow to FINRA from the issuance of a stay since Alpine will continue to operate under the same cease and desist order to which FINRA agreed, and which has been in place for the last two years.

Finally, the public interest favors the injunction. While the public interest favors proper pandemic procedures, there is no proper purpose served by suddenly deciding, after two years, that Alpine must be relegated to an inadequate process. The public interest benefits from continued adherence to principles of due process and fair procedures, particularly because FINRA seeks closure of a business that occupies a critical role in an important segment of the securities markets. Therefore, because a virtual hearing is unwarranted, unfair and a contravention of Alpine's rights, both as a FINRA member and under the U.S. Constitution, Alpine requests an order enjoining FINRA from conducting the remaining Hearing virtually.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

### I. STATEMENT OF FACTS

#### A. The Disciplinary Proceeding against Alpine.

Alpine is a broker-dealer and clearing firm, operating since 1984 in Salt Lake City, Utah. In August 2019, FINRA's DOE instituted a disciplinary proceeding against Alpine relating to the imposition of allegedly excessive fees on customers, asserting that Alpine thereby violated FINRA's requirement of "reasonable" fees under FINRA Rule 2010. Alpine Complaint ("Compl.") at 31, attached hereto as **Exhibit A**, Declaration by Maranda E. Fritz ("Fritz Decl."), filed concurrently, at 8. DOE's allegations stemmed from Alpine's decision in August 2018 to implement a new fee schedule including a monthly account fee, measures undertaken by Alpine because the firm was being

consumed by dramatically increased compliance and transactional costs that are imposed by regulators on firms that participate in the microcap markets. The firm had required substantial capital infusions from ownership to sustain the business and could not continue operating unless it found a way to impose fees that were commensurate with its costs. Absent significant changes in its business model, Alpine was faced with closure and customers were faced with the inevitable injuries that flow from the failure of a clearing firm.

Alpine therefore developed a new fee schedule, intended to pare down Alpine's inactive accounts holding illiquid securities that imposed massive carrying costs on Alpine and severely restricted its ability to conduct transactions for its active customers. Compl. at 32; Fritz Decl. at 10. The new fee schedule was designed to properly reflect the costs of conducting microcap transactions by retaining only the business that provided Alpine with the revenue essential to bear the costs and risks of that business.

To effectuate the change, and in accordance with industry rules concerning disclosure of fees, Alpine gave customers written notice in their August 2018 account statement that new fees had been adopted and would be implemented. Alpine encouraged customers to close or transfer their accounts if they wanted not to incur the new fees. From September 2018 through July of 2019, Alpine sent near monthly notices to their customers asking that they close their accounts and thereby avoid the monthly fee.[3] Compl. at 33, Fritz Decl. at 11. In response to Alpine's notifications, many customers

---

[3] The monthly fee contained on Alpine's fee schedule was designed to serve as a monthly *minimum*; any customer that incurred fees of that amount would not, of course, also be charged a monthly fee. At the same time, customers that did not conduct an active business and/or had failed even to pay the prior fees over the course of years, would be encouraged to close or transfer their accounts and Alpine from the outset did not seek to collect and hold the fee but instead was supposed to reimburse any customer who contacted the firm and arranged to address their account.

confirmed they did not want to be charged the fee, and Alpine agreed to waive the fee and return any funds collected if the customer agreed to close their account and remove their securities from Alpine. Compl. at 34-35. As of May of 2019, however, Alpine was confronted with the fact that a substantial number of customers did not respond to the fee notice. *Id*. at 35.   As a result, Alpine began researching whether those dormant accounts contained "orphaned," abandoned or worthless securities, and offered customers the opportunity to write-off low-value positions.[4] *Id.*at 36.

In the midst of Alpine's ongoing efforts to address inactive accounts, DOE commenced an investigation relating to Alpine's fees and process.   DOE then filed the disciplinary proceeding at issue here on August 5, 2019, seeking to expel Alpine from FINRA and bar it from participating in the securities industry.   Compl. at 37.   DOE also sought a temporary cease and desist order.   *Id.* at 39.

Given concerns expressed by regulators, Alpine had already ceased imposition of certain fees and so it confirmed that same agreement with FINRA. Compl. at 39, Fritz Decl. at 16.   Alpine also agreed with FINRA to reimburse customers for any funds collected on those disputed fees in open accounts and return any securities transferred to accounts relating to abandoned or worthless stock. Compl. at 39-40, Fritz Decl. at 16.   In accordance with that agreement, Alpine then returned funds to customers whose accounts remained open and reversed all securities transfers that had occurred as part of Alpine's efforts to close the inactive accounts. Compl. at 40, Fritz Decl. at 17.

### B.   Alpine Invokes its Right to an In-Person Hearing.

Alpine invoked its right to an "in person" hearing guaranteed by FINRA Rule 9261, and the Hearing Officer ordered the hearing be held in person in Salt Lake City. Fritz Decl. at 42. The parties

---

[4] The write-off process involved selling the securities to Alpine for $0.01.  Alpine placed all securities written-off in this way into a single account and maintained records indicating from which customer each position was obtained, if Alpine had ever needed to reverse the write-off for any reason.

and the Hearing Officer understood that the proceeding would be lengthy and complex. *Id*. at 20-21.
DOE and Alpine both contemplated extensive presentations of witness testimony and thousands of
pages of documents. *Id*. DOE identified seventeen different witnesses, including Alpine's three
executives and five of Alpine's customers.  Alpine identified its own executives, as well as fourteen
other witnesses including customers. *Id*. Before the start of the Hearing, DOE identified 254 exhibits,
including excel files, email correspondence, account records, and summary charts.  Alpine identified
another 245 exhibits before the start of the Hearing. *Id*.

### C.    The Parties Litigate the Issue of Remote Testimony.

Before the Hearing, DOE sought permission to have customer witnesses and one of Alpine's
former directors, testify remotely.  Alpine opposed and the Hearing Officer *denied* DOE's request,
finding that in-person testimony was necessary because the testimony would address "an issue
important in this case" (i.e., the genesis of Alpine's fees) and thus outweighed "the burden and
expense of requiring him to appear in person." Compl. at 45-46, Fritz Decl. at 22-23.

### D.    Enforcement Presents Most of Its Case In Person.

The in-person Hearing began in Salt Lake City on February 18, 2020 and proceeded through
Saturday, February 22, 2020.  Fritz Decl. at 25.   During that time, DOE presented testimony from
six witnesses beginning with the firm examiner, Stacie Jungling.[5]  Her testimony lasted for three full
days and covered most of DOE's case including the extensive analyses of Alpine's fees, its
notifications to customers, and activity in customer accounts.  *Id*. at 27.  DOE followed Ms. Jungling
with other witnesses who testified for several hours each, reviewed and discussed detailed exhibits,

---

[5] Alpine was permitted to call one witness out of order because of scheduling issues.  He testified for
less than three hours, including cross-examination.  Fritz Decl. at 30.

and put forth DOE's evidence concerning alleged issues associated with Alpine's notices to its customers, the imposition of Alpine's fees, and the customers' reactions to the increases in fees. Compl. at 51. The hearing was adjourned on February 22, 2020 due to an urgent family matter affecting Alpine's counsel. Fritz Decl. at 32. In March, the parties agreed to resume in-person proceedings in April 2020, but the COVID-19 pandemic rendered that impossible. *Id*. at 35. While the hearing was postponed several more times, in a series of conferences and communications among the parties and before the Hearing Officer, the parties continued to prepare to resume the Hearing *in person* at a future date. *Id*. at 34-46.

### E. The Hearing Officer's Continued Consideration of Whether to Proceed Remotely.

After the matter was adjourned because of the pandemic, the Hearing Officer asked the parties to consider whether some of the remaining witnesses could testify remotely. Fritz Decl. at 49-50. Alpine, in response, reiterated that it would not consent to proceed through the "document intensive" and critical remainder of the proceeding entirely by remote means. *Id*. at 51. The Hearing Officer indicated this would not be ordered, but encouraged the parties to consider the presentation of at least *some* witnesses by virtual means to advance the proceeding. *Id*. at 52. The Hearing Officer also ordered the parties to participate in an off-the-record test run on the Zoom platform, which occurred on June 18, 2020. *Id*. at 53. That Zoom test run was not without difficulty. *During the presentation of documents, for example, the video frame displaying the witness is reduced to a thumb nail,* making it difficult if not impossible to view the witness's reaction and demeanor. The parties also encountered difficulties zooming in on documents and using annotation features to draw the witness's attention to particular sections of documents. *Id*. at 54-57.

DOE then filed a motion to present remote testimony of *only* two specific witnesses. During

a status conference on July 30, 2020, the Hearing Officer granted that motion based on the personal circumstances of one witness and the fact that FINRA would lose jurisdiction over the other witness prior to resumption of the hearing. *Id.* at 74-75.  During that conference, the parties agreed to resume the Hearing in-person on November 30, 2020, and the Hearing Officer advised that in-person hearings would likely take place in a central location near Washington, D.C. that was being established by FINRA and would accommodate CDC guidelines. *Id.* at 76.  DOE asked what would occur if a participant for the Hearing was traveling to the in-person hearing from a state with a mandatory quarantine. The Hearing Officer stated that, "We would probably postpone the hearing." *Id.* at 78.

**F.    The Parties Proceed with Limited Remote Testimony for Some Witnesses.**

In August, the parties took remote testimony from two of FINRA's customer witnesses, FINRA's employee Mr. Ishak, Mr. Nummi, and one of Alpine's former employees, Randall Jones, whom Alpine agreed could testify remotely. None of the witnesses' testimony was longer than a few hours and only a handful of documents were introduced. Fritz Decl. at 86-88.

During Alpine's cross-examination, witnesses repeatedly indicated they could not hear Alpine's counsel, required questions to be repeated, and had difficulty navigating the exhibits presented.  The court reporter had to ask both parties' counsel to repeat questions and objections, and for the Hearing Officer to repeat rulings on those objections. During the testimony of Mr. Nummi, the connection timed-out and the parties had to wait several minutes for him to rejoin, at which point the substantive topic had to be re-explored. *Id.* at 89-92.

In addition to these technical issues, Alpine also observed a noted difference in the Hearing Panel's participation in the proceedings.  During the in-person presentation of DOE's witnesses, the Hearing panelists regularly asked their own important questions of the witnesses, pressing them on

8

key issues relevant to both DOE's case and Alpine's defense.  Indeed, Alpine's CEO, who was present for the in-person and remote portions of the Hearing, observed this firsthand, including that the Hearing panelists nodded along with the testimony, actively reviewed documents and posed questions, and generally sought to fully participate in the proceedings.  *See* Declaration of Christopher Doubek, at 30-37 [Dkt 6].[6]  Conversely, during the remote sessions, the Hearing panelists ask few questions of the witnesses and presumably struggled, as Alpine and the other participants did, to hear the testimony and fully review and understand the documents in the context of each witness's testimony.  *Id.* at 42-50.  In short, the process was problematic and reinforced Alpine's concerns that certain issues may not have been fully captured on the record.

Counsel in other matters have observed similar problems with conducting a FINRA disciplinary hearing remotely, including learning that one of the hearing panelists could not hear the testimony.  *See* Declaration of Alan Wolper, attached as Exhibit 14 to Fritz Decl.

G.     **FINRA *Sua Sponte* Orders the Hearing to Proceed Remotely Based on a New Purportedly Non-Controversial and Immediately Effective Amendment to Rule 9261.**

The Hearing Officer issued an order on September 18, 2020 setting a status conference for November 2, 2020. Fritz Decl. at 94.  However, on November 2, 2020, without a motion from FINRA or Alpine having an opportunity to be heard, FINRA's Chief Hearing Officer Maureen Delaney issued a generic order directing the remainder of Alpine's Hearing to proceed on Zoom on November 30, 2020 (the "Zoom Order"). *Id.* at 94-95.  The Zoom Order made <u>no</u> reference to the unique aspects of the case, the Hearing Officer's denial of FINRA's earlier application for remote testimony, or the

---

[6] Christopher Doubek is no longer employed at Alpine. Mr. Doubek's Declaration [Dkt. 6] remains an exhibit to the current Motion because he outlined his experience and first-hand knowledge and observations of events at the FINRA in-person hearing and remote testimony.

Hearing Officer's observations concerning the issue of ensuring Alpine's right to a fair hearing in a virtual proceeding.  *Id.*

According to the Zoom Order, the Chief Hearing Officer's authority to issue the Zoom Order was based on SR-FINRA-2020-027, a temporary amendment to FINRA Rule 9261 (the "Zoom Amendment"), which added a sentence (emphasized below) to Rule 9261(b) (entitled "**Party's Right to Be Heard**"):

> If a hearing is held, a Party shall be entitled to be heard in person, by counsel, or by the Party's representative. <u>Upon consideration of the current public health risks presented by an in-person hearing, the Chief Hearing Officer or Deputy Chief Hearing Officer may, on a temporary basis, determine that the hearing shall be conducted, in whole or in part, by video conference.</u>

FINRA Rule 9261(b) (temp. rule, October 1, 2020) (emphasis added).

FINRA filed the Zoom Amendment on August 31, 2020 as a purportedly "non-controversial" rule change under 15 U.S.C. § 78s(b)(3)(A)(iii) and 17 C.F.R. § 240.19b-4(f)(6), such that it would take effect immediately (on October 1, 2020), before the SEC approved or disapproved it or interested parties could comment on it.[7] Compl., at ¶¶ 113-14, and Ex. 3 thereto.  FINRA has since renewed the Zoom Amendment several times, all without notice and comment or prior SEC approval, such that it currently continues through August 31, 2021, pending future extensions.  *See* SR-FINRA-2020-042 (December 1, 2020).

### H.    Alpine Commences this Action.

In response to the November 3 Order, Alpine commenced the instant action on November 10, 2020 seeking a declaratory judgment that the Zoom Amendment was improperly promulgated, is invalid, and constitutes a violation of Alpine's constitutional right to due process of law and its vested

---

[7] The SEC filed the Notice of Filing and Immediate Effectiveness of a Proposed Rule Change (the "Notice of Proposed Rule Change") on September 9, 2020.  *See* Compl., at ¶114 and Ex. 3 thereto.

statutory and contractual rights to a "fair procedure," and "to be heard in person."  Compl., at ¶¶ 137-203, and pp. 37-38. Alpine also filed a Motion for a Preliminary Injunction on November 10, 2020. Dkt. Nos. 4-6. The same day, this Court set a briefing schedule and a hearing on Alpine's Motion for November 24, 2020.  *See* Dkt. No. 8.

However, on the evening of November 16, 2020 – the *day before FINRA's response to the Motion for Preliminary Injunction was due* – FINRA reversed course.  The Hearing Officer suddenly issued a new order (the "Post-Filing Order") postponing the virtual FINRA hearing set for November 30, 2020, and scheduling briefing on whether the Chief Hearing Officer should "reconsider" the Zoom Order. *See* Dkt. No. 20; *see also* Post-Filing Order, Dkt. No. 18-2. As a result of the Post-Filing Order, Alpine withdrew its Motion because the Post-Filing Order removed, for the time being, the imminent threat of irreparable harm. Fritz Decl. at 105.

## I.      FINRA Again Orders that the Hearing is to Proceed Remotely.

On March 5, 2021, Alpine filed a notice with the Court that the FINRA Chief Hearing Officer Maureen Delaney decided not to reconsider her November 2, 2020 and scheduled the hearing to continue in August or September of 2021.  The Chief Hearing Officer stated that "If, six weeks prior to the hearing date, the feasibility and safety of a traditional in-person hearing is uncertain, the hearing will proceed as ordered by videoconference."  Fritz Decl. at 107, Dkt. 35.

On August 9, 2021, the Chief Hearing Officer again ordered that the hearing would proceed remotely beginning on September 20, 2021.  Fritz Decl. at 108.  While other in person proceedings are resuming across the country, with the safety of participants being ensured by requiring proof of vaccinations and other health measures, FINRA apparently intends to continue indefinitely to insist that it cannot conduct an in-person proceeding but *can* force a Respondent to go forward in

contravention of FINRA's assurances to its members.

## II.    ARGUMENT

A preliminary injunction may be issued under Rule 65(a) of the Federal Rules of Civil Procedure when the movant establishes "'(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.'" *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F.Supp.2d 1191, 1197 (D. Utah 2014) (citation omitted). "Where the moving party can show that the second, third, and fourth factors 'tip strongly in [its] favor,' the first factor is satisfied 'by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Utah Rep. Party v. Herbert*, 133 F. Supp. 3d 1337, 1346 (D. Utah 2015).

### A.    Alpine Has a Likelihood of Success on the Merits and Raises a Substantial Question on the Merits.

With respect to likelihood of success, the Tenth Circuit has explained that:

> [t]he very purpose of an injunction under Rule 65(a) is to give temporary relief based on a *preliminary estimate* of the strength of the plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case. Although the courts use a bewildering variety of formulations of the need for showing some likelihood of success, all courts agree that plaintiff must present a prima facie case but *need not show a certainty of winning*.

*Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (emphases added) (internal alternation, quotations and citations omitted). As discussed below, in the midst of Alpine's disciplinary hearing, FINRA impermissibly issued the Zoom Amendment (an amendment to Rule 9261) as a purported "noncontroversial" and "immediately effective" rule change – without notice, comment or SEC approval – under Section 19(b)(3)(A) of the Exchange Act , 15 U.S.C. § 78s(b)(3)(A),

to give the Chief Hearing Officer the authority to deprive a respondent of its right "to be heard in person." The Chief Hearing Officer used this newly-minted authority, *after* DOE had presented most of its case *in person*, to require Alpine to defend itself *via* Zoom. It is FINRA's unprecedented and impermissible promulgation and implementation of the Zoom Amendment that upended the proceeding and that is the basis for all of Alpine's claims for a preliminary injunction. The Zoom Amendment is invalid because it does not fall within the limited scope of that which may be declared "immediately effective," and it violates the prohibitions on retroactive rulemaking. Indeed, the SEC itself has expressly stated it would be *improper* to try to use Section 19(b)(3)(A) to propound an "immediately effective" rule "that would amend the procedures … for disciplinary proceedings."[8]

In addition, FINRA is acting in violation of its agreement with Alpine to provide it with an in-person hearing where it faces disciplinary charges and the most severe of sanctions. Equally plain is that a remote proceeding would be unfair, and thus violate statutory requirements for a "fair procedure" in disciplinary proceedings, 15 U.S.C. § 78o-3(b)(8), and due process: if the injunction is not issued, DOE would have had the benefit of presenting its case in person but Alpine would be forced to deal with the vagaries and inadequacies of remote technology while also trying to present its defense either with its counsel and witnesses in different locations throughout the country, or with its counsel trying to navigate the pandemic and travel to pandemic hotspots. And this will be occurring in the context of a case where there is no need to press ahead at this point, and in which FINRA seeks the regulatory equivalent of a death penalty proceeding. There is no basis or excuse for not affording a litigant a full and fair process when so much is at stake.

---

[8] *See* Securities Exchange Act Release No. 43-35123 (December 20, 1994), available at https://www.sec.gov/rules/final/19b4.txt

13

That leaves only the question of whether FINRA's reliance on its brand new, improperly passed and "immediately effective" and "temporary" Zoom Amendment somehow insulates it from these claims and permits it to disregard all of those considerations for the sake of moving forward right now with the remainder of the Alpine hearing. As detailed below, it does not.

### 1. FINRA Improperly Adopted The Zoom Amendment without a Required Notice and Comment Period.

FINRA filed a Motion to Dismiss Alpine's Complaint. That Motion is fully briefed and remains pending before the Court. Alpine argued, as part of its opposition to FINRA's Motion, that the Zoom Amendment was improperly passed and thus does not legally allow a change to Rule 9261 which requires a hearing to be held "in person." In the interest of efficiency, Alpine hereby incorporates fully its arguments in its Memorandum in Opposition to FINRA's Motion to Dismiss (Dkt. 31) regarding the improper passage of the Zoom Amendment.

In summary, Alpine asserts that FINRA's promulgation of the Zoom Amendment without obtaining SEC approval violates the rulemaking requirements of Section 19(b) of the Exchange Act and SEC Rule 19b-4, and that FINRA's retroactive application of the temporary Amendment deprives Alpine of its constitutional right to due process, its statutory rights to a "fair procedure," and its vested right under FINRA's rules to an in-person hearing.[9] FINRA failed to first submit the Zoom Amendment for notice and comment and SEC approval, but rather filed it as a purported "non-controversial" rule change that would become immediately effective under Section 19(b)(3)(A)(iii) (concerned solely with the administration of the self-regulatory organization). *See*

---

[9] As an SRO, FINRA's authority to act, including to promulgate and enforce rules, derive directly from the Exchange Act, and are subject to extensive SEC oversight and control. 15 U.S.C. § 78s(b)-(e), (g); § 78o-3(a), (b).

85 Fed. Reg. at 55,712, 55, 717.  But the rule at issue here, the Zoom Amendment, is neither "noncontroversial," nor concerned "solely with the administration" of FINRA; it purports to amend FINRA's Code of Procedure, which was approved by the SEC after notice and comment and serves to deprive Alpine and other members of their vested right to an "in person" disciplinary hearing.

The Second Circuit has, in fact, and considered and resolved this exact situation *against FINRA*: whether a purported "immediately effective" rule change was properly characterized and enforceable. In *Fiero,* the plaintiffs ("Fieros") brought a declaratory judgment action claiming FINRA "has no authority to bring judicial actions to collect monetary sanctions," while FINRA argued it "has this authority under the Exchange Act and from a FINRA rule submitted to, and not disapproved by, the SEC in 1990 ('1990 Rule Change')." *Fiero v. FINRA,* 660 F.3d 569, 574 (2d Cir. 2011). After determining the district court had subject matter jurisdiction, the Second Circuit FINRA's claim that it had authority to go to court to collect fines under either the Exchange Act *or* the 1990 Rule Change. *Id.* at 577, 579.  With respect to the 1990 Rule Change, the Circuit held that, "for FINRA to have obtained authority under the 1990 Rule Change" to go to court to collect fines, "the rule must have been properly promulgated under the procedures established by the Exchange Act. ***It was not.***"  *Id.* at 578 (emphasis added).

In support of this holding, the Circuit first recognized that "the mechanisms by which SRO's can change their governing rules" are governed by Section 19(b) of the Exchange Act, and that, subject to certain limited exceptions, "modifications of existing rules for SROs must go through a notice and comment period and obtain SEC approval before becoming effective." *Id.* (citing 15 U.S.C. § 78s(b)(1)).  The Court also observed that in Section 19(b)(3), Congress included an exception to notice and comment, permitting "proposed rule changes take immediate effect upon filing with the

SEC," *only* for certain "'Housekeeping'" rules … which do not substantially affect the public interest or the protection of investors." *Id.*[10]

Applying these principles to the 1990 Rule Change, the Circuit observed that FINRA (while it was NASD) designated it as a "House Keeping" rule that was to become immediately effective upon the SEC's receipt of the filing under Section 19(b)(3)(A).  *Id.* at 579.  The Circuit confirmed that it was not bound by FINRA's characterization of the rule as "housekeeping," and held that the 1990 Rule Change did not fall within the scope of that which could be unilaterally declared to be immediately enforceable under 15 U.S.C. § 78s(b)(3)(A)."  *Id.* at 579.

> As a result, the NASD was required to file the new substantive rule with the SEC under 15 U.S.C. § 78s(b)(1) for publication of a notice and comment period. ***Because the NASD improperly designated the 1990 Rule Change, it was never properly promulgated and cannot authorize FINRA to judicially enforce the collection of its disciplinary fines.***

*Id.* (emphasis added).

Similarly, here, Alpine has a substantial likelihood of prevailing on its claim for declaratory judgment that the Zoom Amendment – the purported authority by which Alpine was ordered to proceed remotely – was improperly promulgated and is unenforceable.  As in *Fiero,* FINRA's characterization of the rule as "noncontroversial" to try to qualify for immediate-effectiveness status is not binding on this court, and frankly is not true because it purports to deprive Alpine and other members of vested rights to an in-person hearing.   FINRA's action, in fact, flies in the face of the SEC's express prohibition against the use of the Section 19(b)(3)(A)(iii) shortcut to amend

---

[10] The rules that qualify for the exception are those: "(i) constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization, (ii) establishing or changing a due, fee, or other charge imposed by the self-regulatory organization, or (iii) concerned solely with the administration of the self-regulatory organization…." 15 U.S.C. § 78s(b)(3)(A).

disciplinary procedures.  As stated by the SEC: a "proposed rule change … that would ***amend the procedures for arbitration or disciplinary proceedings would not be a proper candidate to become effective under Section 19(b)(3)(A).***"[11] The SEC's statement makes sense, because Congress required the *SEC* to "determine," *inter alia,* that FINRA's rules provide for "appropriate[] discipline" and a "fair procedure for disciplining members."  15 U.S.C. § 78o-3(b)(7)-(8). The SEC cannot fulfill this mandate for a rule change that becomes effective immediately, without the SEC's approval.

Moreover, to the extent FINRA claims the Zoom Amendment can be applied retroactively and unevenly in hearings that are already in progress, it is even more concerning than the rule change in *Fiero and* is unlawful for additional reasons. In addition to causing an obvious impairment of Alpine's constitutional right to due process and statutory right to a "fair procedure," the retroactive application of rules to ongoing matters is itself generally unlawful.[12]

An immediately effective rule change can only be enforced "to the extent it is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law." 15 U.S.C. § 78s(b)(3)(C).  This Court has jurisdiction to consider Alpine's challenge, for the reasons detailed in Alpine's Opposition to FINRA's Motion to Dismiss and should grant Alpine's Motion because it is likely to prevail on its claim that the Zoom Amendment,

---

[11] *See* Securities Exchange Act Release No. 43-35123 (December 20, 1994) (emphasis added).

[12] *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 215 (1988) (authority to promulgate rules does not "encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms," and that "administrative rules will not be construed to have retroactive effect unless their language requires this result."); *see also Kresock v. Bankers Tr. Co.,* 21 F.3d 176, 179 (7th Cir. 1994) (holding that changes to NASD's arbitration code could not apply retroactively to conduct that occurred before the amendments became effective because "it is unfair to hold private parties accountable for rules which were not in effect at the time their relevant conduct took place.").

and the FINRA Chief Hearing Officer's orders issued thereunder, are invalid.

### 2. FINRA May Not Deprive a Member of the Right to An In-Person Hearing Guaranteed by its By-Laws and FINRA Rules.

Pursuant to the Exchange Act and subsequent legislation, FINRA has received authorization to perform the critical and deeply impactful function of regulating the conduct of participants in the securities industry.  Initially, under the Exchange Act, the ability to punish someone for a violation of the securities laws was a purely governmental function, delegated by Congress to the Commission. Responsibility for oversight of industry participants was restructured by the Maloney Act, Pub. L. No. 75-719, 52 Stat. 1070 (1938), which amended the Exchange Act to enable the Commission to register national securities exchanges or national securities associations as self-regulatory organizations (SROs) that would, in turn, exercise oversight of the securities industry participants like broker-dealers and clearing firms. By virtue of the Maloney Act, Congress expressly delegated to those SROs the traditionally governmental function of enforcing provisions of the Exchange Act and the Commission's regulations promulgated thereunder, subject to strict Commission oversight.

The Exchange Act also requires broker-dealers and clearing firms, like Alpine, to be a registered member of an SRO in order to conduct business in the securities industry.  15 U.S.C. §§ 78o(a)-(b). Since the merger of the NASD with the regulatory branch of the New York Stock Exchange in the early 2000s, FINRA was and is the *only* securities association registered as an SRO with the Commission. Therefore, Alpine and, indeed, any broker or dealer that wishes to conduct business in the securities industry, *must* be a FINRA member.  *See* 15 U.S.C. § 78o(a).

The Maloney Act also set forth the comprehensive statutory rules that dictate how SROs form and how they must function.  Specifically, to become a registered SRO, as FINRA is, it was required to file with the Commission an application for registration that includes all of the rules of the

association that will govern its members' conduct and its regulation of members. *See* 15 U.S.C. §

78o-3(a).  An association must agree to "comply with the [Exchange Act] and its own rules," (*id.* §

78s(g)(1)(A)) and it must "enforce compliance . . . by its members and persons associated with its

members."  *Id.; see also* 15 U.S.C. § 78s(h).

Among other things, the SRO's rules must provide for the "appropriate discipline" of any

member for violations of the Exchange Act, the rules of the Commission, or the rules of the SRO

through appropriate sanctions.  15 U.S.C. § 78o-3(b)(7).  To effectuate this, the SRO's rules must

provide for "a fair procedure" for such discipline to be carried out. *Id.* § 78o-3(b)(8).  Disciplinary

proceedings must "give [the member] an opportunity to defend against" charges.  *Id.* § 78o-3(h).[13]

To comply with the requirement that FINRA provide to members a fair disciplinary procedure,

the Commission approved FINRA rules that specifically granted a Respondent a right to defend

against disciplinary charges in *an in-person proceeding.*  *See* FINRA Rule 9261.[14] At all times, up to

and including the present, that rule has been interpreted to ensure that a respondent will receive an in-

person hearing at a location to be set by the Hearing Officer assigned to the matter.

The recently constructed Zoom process does not constitute the fair procedure or in-person

hearing that has long been the requirement under the rules.  Implementation of such substantive

---

[13] Once registered as an SRO, the SRO is subject to extensive oversight and control by the Commission.  *See, e.g.,* 15 U.S.C. § 78s(b).  That oversight includes review and approval of all SRO rules by the Commission, and the Commission's right to unilaterally reject, amend, or abrogate any rule proposed by or promulgated by FINRA (*see id.* § 78s(c)).  Similarly, the procedures and rules governing conduct of FINRA's disciplinary proceedings are subject to oversight by the Commission to ensure compliance with the requirements of the Exchange Act, the Commission's rules thereunder, and the SRO's rules. *See id.* § 78s(d)-(e).

[14] As stated in the Notice of Rule Change, "**FINRA Rule 9261(b) states that if a disciplinary hearing is held, a party shall be entitled to be heard in person, by counsel, or by the party's representative. Absent an agreement by all parties to proceed in another manner, OHO conducts disciplinary hearings in-person.**" Compl. at Ex. 3.

changes, including deprivation of the right to an in-person hearing, *midstream in this proceeding and thus retroactively*, does not constitute fair process and in fact only serves to exacerbate the advantage to DOE and the damage to Alpine.

      **3.**    **Forcing Alpine to Proceed Remotely Under the Circumstances of This Case Constitutes a Violation of Due Process of Law.**

In this jurisdiction, however, the issue of whether FINRA is subject to "due process" requirements has been resolved in the affirmative: as succinctly stated in *Rooms v. SEC,* 444 F.3d 1208, 1210 (10th Cir. 2006), the NASD is subject to "due process" requirements.[15] The Tenth Circuit is not alone is ruling that outside of constitutional protections when acting in a quasi-governmental capacity, such as in a disciplinary setting. For example, in *Cody v. SEC,* 693 F3d 251 (1st Cir. 2012), the First Circuit stated, "[b]y statute, FINRA was required to give [respondent] the substance of procedural due process." *Id.* at 257.  And this is the only result that makes sense: because FINRA's authority is "entirely derivative" of, and "ultimately belongs to," the SEC, the obligations of the government cannot be swept aside by virtue of the shift of disciplinary authority to FINRA.  *National Ass'n of Securities Dealers v. S.E.C.,* 431 F.3d 803, 806 (D.C. Cir. 2005).[16]  Further, whether due process obligations are imposed on FINRA directly by the Constitution, or by the Exchange Act

---

[15] In moving to dismiss Alpine's Complaint, FINRA took the astonishing position that it entitled to "absolute immunity" because it acts in a quasi-governmental capacity, while in the next breath claiming that it is not a government actor and therefore not obligated to provide due process to respondents. As a matter of law and logic, both propositions cannot be and are not correct.  Certainly, the law in this area is unsettled as courts have grappled with FINRA's seemingly irreconcilable assertions. *See In re Series 7 Broker Qualification Scoring Lit*., 510 F.Supp.2d 35, 42-44 (S.D.N.Y. 2007) (presenting the question "why should an entity afforded absolute immunity as an extension of the sovereign immunity which governmental agencies enjoy not be held accountable for constitutional violations in the same manner as those governmental agencies?").

[16] *See also Tuberville,* 874 F.3d at 1275 (11th Cir. 2017) ("When exercising these [disciplinary] functions, SROs act under color of federal law as deputies of the federal government").

requirement to provide a "fair procedure," is here a distinction without a difference:  applying an amended rule, retroactively and discriminatorily, to deprive Alpine of vested rights to an in person hearing in a disciplinary proceeding already in progress is neither due process nor a fair procedure.

### 4.  Application of the Zoom Amendment to Alpine is Impermissible.

Even if the Zoom Amendment were a permissible exercise of FINRA's authority, it is being impermissibly applied in this case.   First, because this proceeding was initiated more than a year ago, the application of the rule contravenes the principles against retroactive application. "Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). "[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id*; *see also Kresock v. Bankers Tr. Co.,* 21 F.3d 176, 179 (7th Cir. 1994) (holding that changes to NASD's arbitration code could not apply retroactively to conduct that occurred before the amendments became effective because "it is unfair to hold private parties accountable for rules which were not in effect at the time their relevant conduct took place."). Not only is Alpine aware of *no* express grant of authority for FINRA to enact rules with a retroactive effect but, as indicated, the SEC has stated that the immediate effective rulemaking process is not even available to amend procedures for disciplinary proceedings.

The application of the rule in this case is particularly egregious because it is also obviously inequitable.  DOE was able to present its detailed and complex presentation in the presence of the panel and with all participants in the same room.  Now, when Alpine must respond to those charges, FINRA seeks to hamstring Alpine.  The rule should not be unilaterally changed by FINRA where, as here, the proceeding and Hearing is already underway.

The blanket Zoom Amendment, and the Chief Hearing Officer's reliance on that amendment, also ignores the fact that the Hearing Officer had ruled that Alpine would not be forced to proceed remotely, at least not without DOE demonstrating how Alpine could get a fair hearing in a video proceeding.  The Zoom Order simply nullified that ruling through general pronouncement, without consideration of any of unique circumstances of this case.  The Hearing Officer is the one who has seen firsthand the room full of exhibits and heard the detailed and complex testimony involved in the case, and fully appreciates both the importance of the presentation of evidence and the fact that Alpine's ability to remain in business is at stake.  The Hearing Officer herself had acknowledged the difficulty of proceeding with this Hearing by virtual means given the breadth and importance of remaining witness testimony and documentary evidence.  As indicated above, those concerns were not alleviated during the Zoom test run or limited remote testimony that was taken.  The about-face directly contradicts assurances from the Hearing Officer that the issue would be decided only if DOE brought a formal motion, and inures to the substantial detriment and prejudice of Alpine.

### B.    Plaintiff is Suffering and Will Continue to Suffer Irreparable Harm Absent the Requested Injunctive Relief.

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . ." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citations omitted).  Irreparable harm "may be based on factors such as the 'difficulty in calculating damages ... and [the] existence of intangible harms such as loss of goodwill or competitive market position.'" *See MonaVie, LLC v. Wha Lit Loh*, 2011 WL 1233274, *4 (D. Utah, March 31, 2011).  Importantly, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir.2012).

Here, the fact that Alpine will suffer irreparable harm if forced to proceed *via* Zoom is evident. Courts, judges and attorneys have long ago concluded that trial proceedings should be conducted in person for a host of reasons including the importance of a fact finder's ability to assess and evaluate witnesses, to receive and process the evidence, and ensure that the proceedings are at all times fair and impartial. FINRA agreed, explicitly stating that a Respondent in a disciplinary hearing has a right to an in-person hearing. FINRA now seeks to strip away those rights and proceed remotely. By this proceeding, FINRA seeks to force the closure of Alpine, ending its business after more than 35 years of operation. In the meantime, Alpine has no means – other than this Court – to obtain relief. The Chief Hearing Officer's order requiring that *only* the second half of the hearing be conducted remotely is not appealable and so there is no process within FINRA to obtain any review of this unprecedented action. The rule itself has not been reviewed or approved by the SEC; it is still undergoing notice and comment, and so there is no means to meaningfully challenge the amendment.[17] And even if there were a means by which to present a claim to the SEC that the rule should not be "immediately effective" and is invalid, the only means by which to assert that claim would take far longer than the approximately three weeks that Alpine has before the hearing resumes. Only a stay of the proceeding will enable Alpine to obtain fair consideration of these issues.[18]

---

[17] *See* 15 U.S.C. § 78s(b)(3)(C) (stating that "Commission action" on an immediately effective rule change "shall not be reviewable under section 78y . . . nor deemed to be 'final agency action' for the purposes of [the APA]."); *NetCoalition v. S.E.C.,* 715 F.3d 342, 353 (D.C. Cir. 2013) ("We make clear that section 19(b)(3)(C) imposes a *jurisdictional* bar to our review of the Commission's decision not to suspend a proposed rule change.").

[18] Alpine has previously attempted to obtain relief through petitions to the SEC to challenge rules, and has even sought interim relief, but the SEC does not have a process by which Alpine can obtain expedited consideration of a stay application. In one instance, a stay of a FINRA proceeding was sought but Alpine could not obtain any review of that petition in the weeks leading to the proceeding. If this Court is of the view that Alpine should seek relief from the Commission, Alpine requests that

**C.**     **The Balance of Equities Tips in Favor of Plaintiff's Request for Preliminary Injunctive Relief.**

In determining whether to grant an injunction, consideration must be given to whether the defendant would suffer greater harm than the plaintiff if the requested injunctive relief is granted. *See Davis v. Minetta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Here, the equities weigh strongly in favor of granting Alpine the requested injunctive relief. While Alpine will suffer a violation of its rights and significant irreparable harm if this matter proceeds apace, the defendant will suffer no harm if the matter is adjourned until in person proceedings can resume.  The proceeding has already continued for approximately eighteen months, with Alpine operating under the cease-and-desist order and with no ongoing harm to its customers.  FINRA does not even seek any relief, in addition to the cease and desist, in relation to customers, except for the request that Alpine provide reimbursements of collected fees to closed accounts.  DOE has presented no evidence that any customer has incurred any damages. In fact, Alpine has effectively eliminated all retail accounts, and so no longer imposes the kinds of fees at issue in the FINRA proceeding.

**D.**     **Issuance of Injunctive Relief is in the Public Interest.**

To prevail on this element, Plaintiff need only establish that injunctive relief will not be averse to the public interest. *See City of Chanute v. Kansas Gas & Elec. Co.*, 754 F.2d 310, 312 (10th Cir. 1985). The public interest, particularly in this moment, favors the FINRA follow the law in regard to proper notice and comment periods in order to amend a Rule.  In addition, the public interest supports due process to businesses, and not seeking to shutter businesses that have managed to continue to operate and provide employment during the pandemic.

---

the Court issue a stay of the proceeding pending the SEC's consideration of Alpine's application so that Alpine is not confronted with an inability to get any response from the SEC in the time frame.

There is no countervailing public concern that would outweigh the interest in affording due process to a business in these economic circumstances, and the right to present its case on a fair and equal footing to DOE.   Alpine is not seeking a blanket prohibition on Zoom hearings; it is seeking a ruling predicated on the precise and unique circumstances of this case.  Here:

- The proceeding is a disciplinary matter in which FINRA plainly exercises traditionally governmental functions delegated to it and so is subject to due process requirements;

- The proceeding was initiated prior to current events and should not have the rules of the road changed in midstream, particularly where DOE has already had the advantage of presenting its evidence in person;

- The proceeding is particularly complex and document intensive, with lengthy periods of financial and documentary analysis, and because of the extensive use of documents, the testifying witness in a remote proceeding would be viewed only in a thumbnail view, making it impossible to assess any of the witness' demeanor or credibility by virtual means;

- The Hearing Officer has considered the issue of remote testimony and had determined that Alpine would not be forced to proceed remotely without a motion and an opportunity to be heard because DOE would have to articulate how Alpine could obtain a fair proceeding.

It is because of *these* circumstances that the Court should enjoin a remote proceeding until FINRA's unprecedented steps can be evaluated by the Court, ensuring due process for businesses, including equal treatment of an amended rule and avoiding retroactive application of the new temporary rule.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant this Motion and enter an order enjoining FINRA from conducting the remainder of Alpine's Hearing virtually.

DATED this 16th day of August, 2021.

**PARSONS BEHLE AND LATIMER**


/s/ *Aaron D. Lebenta*
Aaron D. Lebenta


**MARANDA FRITZ, P.C.**


/s/ *Maranda E. Fritz*
Maranda E. Fritz


*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

On this 16th day of August 2021, I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which in turned caused it to be served electronically with all counsel of record.


/s/ Aaron D. Lebenta