THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALPINE SECURITES CORPORATION, a Utah Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, a Delaware Corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [27] MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00794-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Defendant Financial Industry Regulatory Authority's (FINRA) Motion to Dismiss (Motion).[1] Having reviewed the parties' briefing, the court concludes the motion may be resolved without oral argument.[2] Because this court lacks subject-matter jurisdiction, the Motion is GRANTED.

### BACKGROUND

Alpine Securities Corporation (Alpine) is a registered broker-dealer, clearing firm, and member of FINRA.[3] In August 2019, FINRA's Department of Enforcement (DOE) began disciplinary proceedings against Alpine regarding alleged excessive fees Alpine had charged.[4] FINRA has been authorized under the Securities Exchange Act of 1934 (Exchange Act) to create rules and regulations regarding how it conducts proceedings and investigations.[5] In defending

---

[1] Defendant's Motion to Dismiss (Motion), ECF No. 27, filed December 16, 2020.

[2] *See* DUCivR 7-1(f).

[3] Complaint at ¶ 1, ECF No. 2, filed November 11, 2020.

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶¶ 1–3, 15, 17; *see also* 15 U.S.C. § 78s.

against the disciplinary proceeding, Alpine appeared at an in-person hearing that began on February 18, 2020.[6] The DOE presented six witnesses and documentary evidence while Alpine presented one witness before the hearing was adjourned on February 22, 2020 due to an urgent matter for Alpine's counsel.[7] The hearing was to resume in late April 2020, but the COVID-19 pandemic delayed the hearing.[8] Over the next few months, the parties discussed the possibility of proceeding and potentially presenting testimony virtually.[9] Alpine expressed its concerns about proceeding virtually.[10] On August 31, 2020, FINRA adopted a temporary amendment (Amendment) to FINRA Rule 9261 providing that FINRA proceedings could continue virtually.[11] On November 2, 2020, the Chief Hearing Officer ordered the remainder of Alpine's proceedings to resume on November 30, 2020 by virtual means.[12]

Shortly thereafter, Alpine filed a complaint against FINRA for: (1) declaratory judgment that FINRA breached its agreement with Alpine, (2) violation of Alpine's Due Process Rights; (3) preliminary and permanent injunctive[13] relief; and (4) declaratory judgment that the Amendment to FINRA's rules is invalid.

FINRA moved to dismiss the case on six grounds: (1) the Exchange Act's exclusive review process strips this court of subject-matter jurisdiction; (2) Alpine lacks a private right of action to pursue claims; (3) FINRA is immune from claims arising from the performance of its

---

[6] Complaint at ¶ 4.

[7] *Id.*

[8] *Id.* at ¶¶ 4, 56, 67–69, 82, 89.

[9] *Id.* at ¶¶ 58, 69.

[10] *See id.* at ¶ 70.

[11] *Id.* at ¶¶ 4–6, 111, 113.

[12] *Id.* at ¶¶ 5, 108, 110, 111.

[13] Alpine also filed a separate Motion for Preliminary Injunction, ECF No. 4 on November 10, 2020. Alpine later withdrew this motion. *See* Withdrawal of Motion, ECF No. 23, filed November 19, 2020. On August 16, 2021, Alpine filed a Second Motion for Preliminary Injunction. ECF No. 36.

regulatory functions; (4) Alpine's due process claim fails because FINRA is not a state actor; (5) Alpine's declaratory relief claims are meritless; and (6) Alpine admitted it was not entitled to injunctive relief.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[14] District courts are precluded from hearing claims subject to an exclusive administrative review process.[15] Motions to dismiss for lack of subject-matter jurisdiction can take two forms: (1) "a facial attack on the complaint's allegations as to subject matter jurisdiction;" and (2) a factual attack that goes beyond allegations contained in the complaint and challenges "the facts upon which subject matter jurisdiction depends."[16] As to a facial attack, the court must accept the allegations in the complaint as true and with a factual attack, the court "may not presume the truthfulness of the complaint's factual allegations."[17] FINRA makes a facial attack as to jurisdiction, so the court relies on the allegations in the complaint. Additionally, because the resolution of the jurisdictional question is not intertwined with the merits of the case, the motion is not converted to a Rule 12(b)(6) motion or a Rule 56 summary judgment motion.[18]

---

[14] *Kokkonen v. Guardian Life. Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[15] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994).

[16] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).

[17] *Id.* at 1002–03.

[18] *Id.* at 1003.

## DISCUSSION

### I. This Court Lacks Subject-Matter Jurisdiction.

Alpine brings this action because it is concerned about FINRA's process for conducting the disciplinary hearing against it. Specifically, Alpine asserts that it will be disadvantaged if the remainder of its disciplinary hearing is held virtually opposed to in-person. In other words, Alpine is alleging that the use of video conferencing violates its rights.

The Exchange Act authorizes the Securities and Exchange Commission (SEC) to register self-regulatory organizations, such as FINRA, that then have authority to promulgate rules and regulations to enforce compliance with the Exchange Act.[19] The Exchange Act dictates how disciplinary proceedings of registered association members are conducted.[20] Under this guidance and authority, FINRA has enacted rules of procedure regarding disciplinary proceedings and review of the disciplinary proceeding.[21] The rules provide that after receiving a decision in a FINRA disciplinary proceeding, either party may file an appeal to the National Adjudicatory Council (NAC).[22] The NAC may affirm, dismiss, modify, or reverse the decision of the FINRA hearing panel.[23] A Governor of the FINRA Board then may call for a review of the NAC determination by the FINRA Board.[24] This becomes FINRA's final action.[25]

---

[19] *See* 15 U.S.C. § 78o-3(b)(2); *see also Scottsdale Capital Advisors Corp. v. FINRA* (*Scottsdale I*), 844 F.3d 414, 417–418 (4th Cir. 2016).

[20] *See* 15 U.S.C. § 78o-3(h).

[21] *See* FINRA Rules 9210–9370, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/9000.

[22] FINRA Rule 9311.

[23] FINRA Rule 9349(a). The current version of the rule was amended May 8, 2020 (during the continuation of Alpine's hearing). The temporary amendment makes changes to the timing, method of service, and other procedural requirements during COVID. But the substance of the rule, and the appeals process, have not changed. *See id.* (commenting that the "version is temporary and effective May 8, 2020, through December 31, 2021, pending any future extensions); *see also* SR-FINRA-2020-015.

[24] FINRA Rule 9351.

[25] *Id.*

Under the Exchange Act, after FINRA's final disciplinary action is taken, it must file notice with the SEC.[26] An aggrieved respondent may apply for review of the final disciplinary action by the SEC.[27] The SEC can affirm, modify, set aside, or remand the action.[28] If a party is aggrieved with the SEC's final decision, it can obtain review in the appropriate United States Court of Appeals.[29]

So, to summarize, FINRA initiates a disciplinary proceeding. The hearing panel issues a decision. An aggrieved party can appeal FINRA's decision to the NAC. If the party is unhappy with the NAC's decision, it can file an appeal with the SEC. And if the party is unhappy with the SEC's decision, it can appeal to the appropriate United States Court of Appeals.

Whether this court has jurisdiction depends on whether this "statutory scheme" precludes a separate action in the district court. The Supreme Court's decision in *Thunder Basin Coal Company v. Reich*[30] established a two-part "framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district-court jurisdiction."[31] To succeed under the first step, the court must "find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'"[32] As to the second step, the claims must be "of the type Congress intended to be reviewed within the statutory structure."[33] Three factors in making this second determination are: (1) whether the

---

[26] 15 U.S.C. § 78s(d)(1), (2).

[27] FINRA Rule 9370(a); *see also* 15 U.S.C. § 78s(d), (e).

[28] 15 U.S.C. § 78s(e)(1).

[29] *Id.* § 78y(a)(1).

[30] 510 U.S. 200 (1994).

[31] *Jarkesy v. S.E.C.*, 803 F.3d 9, 12 (D.C. Cir. 2015); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010).

[32] *Thunder Basin*, 510 U.S. at 207.

[33] *Id.* at 212.

claims are "wholly collateral" to a statute's review provisions; (2) if the claims are outside the agency's expertise; and (3) the availability of meaningful review.[34]

### A. It is "fairly discernible in the statutory scheme" that Congress has allocated initial review of Alpine's claims to FINRA.

In determining whether congressional allocation of initial review is "fairly discernible," courts review the statute's language, structure, purpose, and legislative history.[35] "Generally, when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'"[36]

The Exchange Act's language and structure support such a finding. As discussed above, the Exchange Act and FINRA's rules provide: (1) that a respondent to a disciplinary proceeding can seek review of that result from the NAC; (2) if the party is unhappy with the NAC's conclusion, it can appeal to the SEC; (3) if the party is then unhappy with the SEC's conclusion, it can seek judicial review by a United States Court of Appeal.[37] This process is detailed, provides multiple avenues for review, and culminates in judicial review. This shows congressional intent to allow FINRA and the SEC to review claims like those at issue here. The Exchange Act provides a mechanism by which all FINRA disciplinary proceedings can receive a final administrative action and then can be reviewed by the SEC and the appropriate appellate court.

---

[34] *Id.* at 212–13; *see also Scottsdale Capital Advisors Corp. v. FINRA* (*Scottsdale II*), 811 Fed. App'x 667, 667–68 (D.C. Circuit 2020).

[35] *Thunder Basin*, 510 U.S. at 207.

[36] *Free Enterprise*, 561 U.S. at 489 (citation omitted).

[37] *See* 15 U.S.C. § 78o-3(h); *Id.* § 78s(d)(1), (2); *Id.* § 78s(e)(1); *Id.* § 78y(a); FINRA Rules 9311, 9349(a), 9351, 9370(a),

Additionally, the Exchange Act and the Federal Mine Safety and Health Amendments Act (Mine Act) contain "nearly identical judicial-review provisions."[38] In *Thunder Basin*, the Supreme Court determined the Mine Act to be exclusive and precluding district court jurisdiction.[39] Under the Mine Act, the mine operator had thirty days to challenge before any citation was issued.[40] The challenge was to be heard before an ALJ with review by the Federal Mine Safety and Health Review Commission (FMSHRC).[41] A mine operator could challenge the adverse FMSHRC decision in an appropriate court of appeals.[42] That process is similar to the procedures detailed above in the Exchange Act and FINRA rules.

Additionally, while the parties do not cite to any Tenth Circuit cases, other circuits have analyzed the language and purpose of the Exchange Act and concluded that because of the "painstaking detail with which Congress set forth the rules governing the court of appeals' review of Commission action, it is fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court."[43] These cases are persuasive and informative.

---

[38] *Jarkesy*, 803 F.3d at 16; *compare* 15 U.S.C. § 78y(a)(1) *with* 30 U.S.C. § 816(a).

[39] *Thunder Basin*, 510 U.S. at 216 ("We conclude that the Mine Act's comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a 'fairly discernible' intent to preclude district court review in the present case.").

[40] *Id.* at 207.

[41] *Id.* at 207–08.

[42] *Id.* at 208.

[43] *Jarkesy*, 803 F.3d at 17 (internal quotation marks omitted, alteration in original) (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012)); *see also Hill v. S.E.C.*, 825 F.3d 1236, 1242 (11th Cir. 2016) (analyzing 15 U.S.C. § 78y and determining it "makes clear that Congress intended to preclude federal district court litigation involving challenges to final [SEC] orders" in part because it is "comprehensive, covering all final [SEC] orders without exception"); *Tilton v. S.E.C.*, 824 F.3d 276, 281–282 (2d Cir. 2016) (determining the SEC's statutory administrative review scheme precluded those responding to SEC enforcement actions "from initiating lawsuits in federal courts as a means to defend against them"); *Bebo v. S.E.C.*, 799 F.3d 765, 767–78 (7th Cir. 2015) (determining that it was fairly discernible from 15 U.S.C. § 78y that Congress intended similar plaintiffs "to proceed exclusively through the statutory review scheme").

The Exchange Act's scheme is detailed and comprehensive, and it is "fairly discernible" that Congress intended review of Alpine's claims to initially be reviewed within that scheme.

### B. Alpine's claims are of the type Congress intended to be reviewed within the statutory structure.

As to the second step of the *Thunder Basin* test, the court reviews: (1) whether the claims are "wholly collateral" to a statute's review provisions; (2) if the claims are outside the agency's expertise; and (3) the availability of meaningful judicial review.[44]

First, Alpine's claims are not "wholly collateral" to the statutory scheme. Alpine asks the court to enjoin FINRA's disciplinary proceeding from continuing virtually. This is directly related to the statutory scheme and administrative process.[45] The other causes of action relate directly to the Exchange Act's process and FINRA's authority to enact certain rules. These relate to the statutory scheme and do not fall outside its scope. Like the D.C. district court noted in a similar case, Alpine's issues are "closely tied to FINRA's governance, structure, and regulations, and 'inextricably intertwined' with powers [the] 'statute grants [to] the SEC…as an initial matter.'"[46] And these "are precisely the types of issues that Congress has committed to the SEC's expertise and competence."[47] The claims based on FINRA's actions within the disciplinary proceeding and administrative procedure are not collateral.[48]

Alpine disagrees and argues that its complaint regarding the Amendment and the violation of its right to an in-person hearing are "distinct from the underlying facts and rules at

---

[44] *Thunder Basin*, 510 U.S. at 212–13; *see also Scottsdale II*, 811 Fed. App'x at 667–68.

[45] *See Scottsdale I*, 844 F.3d at 423 ("As Scottsdale's claim arises out of the proceeding against it and provides an affirmative defense, it is not wholly collateral to the statute.").

[46] *Scottsdale Capital Advisors Corp. v FINRA*, 390 F. Supp.3d 72, 80 (D. D.C. 2019) (citation omitted).

[47] *Id.*

[48] *See id.*

issue in the disciplinary action."[49] The court rejects this argument. Alpine's complaints all revolve around FINRA's process for the disciplinary hearing, all of which are accounted for in the Exchange Act and relevant rules and regulations.

Second, the claims are not outside the expertise of FINRA and subsequent reviewing authorities. FINRA's authority to conduct hearings, as well as to promulgate rules and operating procedures, is within the expertise of the NAC and SEC. The Exchange Act "lays out a comprehensive oversight scheme whereby Congress gives the SEC the authority to supervise FINRA's rules" and has "vested authority in the SEC to review a 'final disciplinary sanction imposed by' FINRA and determine whether its rules 'were applied in a manner consistent with the purposes' of the Exchange Act."[50] And, as at least two other courts have determined, "the propriety of FINRA's actions or rules is 'the type of question [ ] that the [SEC] has frequently resolved in the past.'"[51] These types of claims are "inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter."[52]

Alpine argues that neither FINRA nor the SEC have any expertise in resolving its allegations of constitutional violation of due process. However, this argument runs afoul of the Supreme Court's holding in *Elgin v. Department of Treasury*.[53] There, the petitioners similarly argued the statutory scheme did not provide a meaningful review because the administrative

---

[49] Opposition at 19, ECF No. 31, filed February 1, 2021.

[50] *Scottsdale I*, 844 F.3d at 424 (cleaned up) (quoting 15 U.S.C. § 78s).

[51] *Scottsdale*, 390 F. Supp. 3d. at 80 (alterations in original) (quoting *Elk Run Coal Co. v. United States Dep't of Labor*, 804 F. Supp. 2d 8 (D. D.C. 2011)).

[52] *Jarkesy*, 803 F.3d at 23.

[53] 567 U.S. 1 (2012).

agency did not have authority to declare a federal statute unconstitutional.[54] The *Elgin* court, relying on the *Thunder Basin* standard, concluded that congressional intent to preclude district court jurisdiction that is "fairly discernible" preempts "even if the administrative body could not decide the constitutionality of a federal law" because it can still be "meaningfully addressed by the Court of Appeals."[55] Here, FINRA, the NAC, and the SEC all have appropriate expertise regarding the proper interpretation and application of the relevant rules and procedures. And any constitutional challenges Alpine might make can be adequately addressed on any appeal to the appropriate appellate court.

  Third, Alpine has an opportunity for meaningful judicial review within the Exchange Act's scheme. After participating in FINRA's proceeding, Alpine can appeal to the NAC, the SEC, and the appropriate United States Courts of Appeals. Alpine argues dismissal of its case would foreclose all meaningful judicial review. It relies on 15 U.S.C. § 78s(b)(3)(C) that the SEC's final determination regarding the Amendment is not reviewable. However, that subsection applies to the challenge of a FINRA rule, not a final agency action on the outcome of Alpine's disciplinary hearing. Alpine also has the additional avenue of petitioning the SEC to repeal the Amendment outside of the disciplinary proceeding.[56] Seeking to repeal the Amendment does not foreclose any opportunity Alpine may have to appeal the result of the disciplinary proceeding. Alpine complains about the procedure and the length of time it would take to appeal the Amendment to the SEC. It argues it previously filed a petition with the SEC that was not

---

[54] *Id.* at 16.

[55] *Id.* at 17 (cleaned up); *see also Jarkesy*, 803 F.3d at 18 ("[S]o long as a court can eventually pass upon the [constitutional] challenge, limits on an agency's own ability to make definitive pronouncements about a statute's constitutionality do not preclude requiring the challenge to go through the administrative route." (citing *Elgin*, 567 U.S. at 16–18)).

[56] *See* 17 C.F.R. § 201.192 ("Any person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefor with the Secretary."); *see also Scottsdale I*, 844 F.3d at 423.

resolved for over two years.[57] Alpine's frustration regarding the timeliness of a SEC decision does not grant this court jurisdiction where it has none. The Exchange Act and FINRA rules provide a process that allows for meaningful judicial review of FINRA's determination in the disciplinary proceeding against Alpine.

Each of these factors weighs in favor of determining that Alpine's claims are of the type Congress intended to be reviewed under the Exchange Act's statutory scheme. Two circuit courts have made similar determinations in *Scottsdale I* and *Scottsdale II*.[58] In both cases, the D.C. and Fourth Circuits analyzed the Exchange Act under the *Thunder Basin* framework and determined the Exchange Act precluded district court jurisdiction over complaints about FINRA actions.[59] Alpine tries to distinguish the *Scottsdale* cases because they do not "involve challenges to immediately effective rule changes or their retroactive application."[60] However, this distinction fails. Alpine's dispute with FINRA about its own rules can be pursued under the Exchange Act. As the D.C. Circuit made clear, the plaintiff "could not sue FINRA in federal district court for FINRA's alleged failure to comply with the Act."[61] The same is true here. Alpine is attacking the disciplinary proceeding which is governed by the Exchange Act's detailed scheme. Alpine is entitled to multiple layers of review if it proceeds with the remote disciplinary hearing and receives an unsatisfactory result. The statutory scheme provides the exclusive appellate process for all decisions related to the outcome of Alpine's disciplinary hearing.

### C. Alpine does not present any binding authority to persuade the court that it has jurisdiction.

---

[57] Opposition at 18.

[58] *See Scottsdale II*, 811 Fed. at 667–68; *Scottsdale I*, 844 F.3d at 421–24.

[59] *Scottsdale II*, 811 Fed. App'x at 667–68; *Scottsdale I*, 844 F.3d at 422–24.

[60] Opposition at 17.

[61] *Scottsdale II*, 811 Fed. App'x at 667.

Outside of the discussion of the *Thunder Basin* test, Alpine relies on various authorities to argue this court has jurisdiction over its claims. None of these arguments are persuasive.

In *Fiero v. FINRA*, 660 F.3d 569 (2d Cir. 2011), the plaintiffs challenged FINRA's authority to bring a judicial action to collect monetary sanctions imposed as the result of a disciplinary proceeding which fined the plaintiffs over $1,000,000.[62] This case is distinguishable because the plaintiffs were not challenging an ongoing FINRA proceeding like Alpine is here. Following the Exchange Act's appeals process, plaintiffs appealed to the NAC, which affirmed the fine.[63] Plaintiffs did not appeal to the SEC.[64] Plaintiffs refused to pay the fine, so FINRA filed an action in state court to collect the money.[65] After the state appellate court determined the state courts lacked jurisdiction, the plaintiffs filed an action in federal court seeking a declaratory judgment that FINRA had no authority to collect fines through judicial proceedings.[66] The district court granted FINRA's motion to dismiss.[67]

The Second Circuit reversed, determining that the Exchange Act did not grant FINRA authority to bring judicial actions to enforce collection of fines.[68] FINRA brought an action in the court that it had no authority to bring under the relevant rules. The issue was not about the ongoing proceeding but the *enforcement* of the results of the proceeding. And this was not an issue that the court analyzed under the *Thunder Basin* framework. Because there was no express statutory authority, the Second Circuit could not conclude that Congress intended to empower

---

[62] *Fiero*, 660 F.3d at 572. NASD was the predecessor of FINRA and is referred to in the opinion as well as FINRA. For convenience, the court uses FINRA in this summary.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 573.

[67] *Id.*

[68] *Id.* at 574.

FINRA to bring judicial actions to enforce its fines.[69] Alpine's analogy that this case similarly deals with an "immediately effective" rule change is unpersuasive as well. Alpine's complaint that FINRA lacks authority to enact the Amendment suffers from the same defects described above.

Alpine also relies on the Supreme Court's decision in *Free Enterprise v. Public Company Accounting Oversight Board*.[70] *Free Enterprise* is distinguishable because it involved a challenge to the *existence* of the Public Company Accounting Oversight Board (PCAOB) (under the Appointment Clause), not just PCAOB's actions.[71] Plaintiffs sought declaratory judgment that the PCAOB was unconstitutional and an injunction preventing the PCAOB from exercising its powers.[72] The Supreme Court determined the plaintiffs could not meaningfully pursue their constitutional claims under the statute because 15 U.S.C. § 78y provides for judicial review of Commission action but "not every [PCAOB] action is encapsulated in a final Commission order or rule."[73] Here, as discussed above, Alpine's claims fall within the detailed statutory scheme that allows Alpine to appeal the outcome in its yet-to-be-finalized proceeding.

The Supreme Court also rejected the argument that the plaintiffs could have sought review of certain PCAOB's standards or other rules because their challenge was not to the rules but to the constitutionality of the PCAOB.[74] The Supreme Court stated it would be "an odd procedure for Congress to choose" to require the plaintiffs to challenge some rule at random

---

[69] *Id.* at 574–79.

[70] 561 U.S. 477 (2010).

[71] *Free Enterprise*, 561 U.S. at 487.

[72] *Id.*; *see also id.* at 490 ("But petitioners object to [PCAOB's] existence, not to any of its auditing standards.").

[73] *Id.* at 490.

[74] *Id.*

13

rather than be able to bring their constitutional claim.[75] The Supreme Court further rejected the argument that the plaintiffs had to incur some kind of sanction so they could then appeal to the appropriate court.[76] The Supreme Court would not require the plaintiffs to "bet the farm" by taking a violative action to test the validity of the law and complain about PCAOB's authority in general.[77] In short, there were gaps in the relevant statute and the actions that were challenged.[78] Here, there are no such gaps. The Exchange Act and FINRA's appellate procedure cover Alpine's complaints. As the *Scottsdale* district court noted, an attack on the "propriety of FINRA's rules and actions" unlike the "Article II questions animating *Free Enterprise*, are firmly within the SEC's expertise" and within the statutory scheme.[79] There is no concern that any resulting determination from FINRA would not lead to a final SEC order or rule that would be reviewable by the appropriate appellate court. Simply, the concerns present in *Free Enterprise* are absent here.

Alpine also cites to three statutes arguing they grant this court jurisdiction: (1) 28 U.S.C. § 1331 (federal question jurisdiction), (2) 28 U.S.C. § 2201 (declaratory judgments), and (3) 15 U.S.C. § 78aa(a) (enforcement of liability or duty under the Exchange Act). *Free Enterprise* forecloses Alpine's arguments that the court has jurisdiction under these statutes. The key is whether application of the *Thunder Basin* test limits jurisdiction.[80] If the *Thunder Basin* requirements are met, the statutes cannot overcome the preclusive effect of the administrative scheme. Alpine has not shown how any of these statutes would make inapposite the *Thunder*

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *See id.*

[79] *Scottsdale*, 390 F. Supp. 3d at 82.

[80] *Free Enterprise*, 561 U.S. at 489.

*Basin* analysis precluding this court from exercising jurisdiction. None of these statutes provide an independent basis for jurisdiction that overcomes the overall statutory scheme.

## II. FINRA's Remaining Arguments for Dismissal

FINRA argues five other reasons why dismissal is appropriate. Because the court determines it does not have jurisdiction to hear this matter, no analysis of these arguments is warranted.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Defendant's Motion to Dismiss is GRANTED.

Signed September 7, 2021.

BY THE COURT

David Barlow
United States District Judge